DANIEL SCOTT, plaintiff in error, *vs.* AMANDA SCOTT, administratrix of SAMUEL SCOTT, deceased, and THOMAS F. JONES, defendants in error.

When the assets of a mercantile firm were placed in the hands of its confidential clerk for the purpose of collecting the same and paying therefrom the firm debts, and on a bill filed by such clerk, alleging that he had paid out of his individual funds a portion of the copartnership debts: *Held*, that notes given by the firm in his possession, and receipts for money to the firm creditors, were *competent* evidence to be submitted to the jury, though not conclusive as to the fact, that the payment was made with his own money.

Equity. Motion for new trial. Decided by Judge SPEER. Newton Superior Court. March Term, 1867.

The bill of Daniel Scott, against Amanda Scott, as administratrix of Samuel Scott, of Newton county, and Thomas F. Jones, of Calhoun county, contained the following averments: David M. Parker, Samuel Scott and Thomas F. Jones were merchandizing at Clarkesville, Newton county, Georgia, under the firm name of Parker, Scott & Co., till 1849, when Parker withdrew, and the other partners continued the business at the same place, under the firm name of Scott & Jones, till near the end of 1852.

Daniel Scott was Samuel Scott's brother and Jones' brother-in-law, and was during the most of the time said last firm did business its confidential clerk and agent, having almost exclusive control of the business, as both of the partners were otherwise engaged.

When they dissolved, they delivered to Daniel the books of accounts and some notes, with instructions to collect and with proceeds pay the debts of the firm. He took upon himself this trust, and finding that the debts were greater than the assets, in carrying out the trust, from time to time advanced his own funds to pay the firm debts. He owed the firm when it dissolved for goods bought, and for cash, and for certain articles and notes appropriated by him, and for money collected by him on said assets; and they owed him for certain cotton which he bought from Jeremiah Scott, for

money advanced towards paying their debts and their promissory notes.

A balance sheet of said account between him and the firm is exhibited in his bill, by which it appears that it owed him $1,842.65, besides said notes. On the 2d of June, 1854, he presented the balance sheet to Samuel Scott, and delivered up to him the firm books and vouchers; he examined it and said it was correct, except that Daniel owed the firm four dollars for steelyards, which had not been charged against him in said balance sheet, and this was at once corrected. Daniel asked Samuel to pay him, but he put him off, saying he (Samuel) and Jones must first settle; then he asked Jones to pay him, and he also excused himself because he and Samuel had not settled the firm business. Samuel wished Daniel to sue the firm, so as to force Jones to settle with Samuel, but Daniel did not like to sue his relations. Samuel meanwhile advanced Daniel various sums of money, but instead of taking Daniel's receipts for the same as so much in extinguishment of the firm account, took Daniel's notes, with the understanding that he would hold them till Samuel and Jones had a settlement, and then give them up to Daniel. According to this arrangement, Daniel got from Samuel the following sums, and gave his notes, payable to Samuel Scott or bearer, all due one day after date, to-wit: For $706.65 on the 15th of June, 1857; $45.72 on the 18th of February, 1858; $558.90 on the 12th of July, 1858; and $100.00 on the 28th of September, 1858; and also another for $249.54 on the 29th of February, 1856, payable to James Scott or bearer.

In 1859 Samuel died, leaving Daniel unpaid and the firm business unsettled. His wife Amanda became his administratrix, and as such sued Daniel on his said notes to November term, 1861, of Newton Superior Court. (He plead his account against the firm as set-off, and that he was not indebted by reason of said understanding, confessed judgment, and entered an appeal).

Pending this appeal (in 1866), he filed this bill stating the foregoing and that the administratrix pretends that the firm

owes him nothing, that Samuel's estate is of doubtful solvency, and praying that she and Jones be compelled to account with each other and settle the firm business, and then account and settle with him, and that meanwhile her said common-law action be enjoined.

The injunction was granted and the administratrix was served.

In her answer to the bill, she states that she understood that the firm sold out to Daniel, but knew nothing about the charges in the bill, insisted on proof, and plead the statute of limitations.

In March, 1867, Jones came forward and answered the bill, admitting the charges therein, and stating that in 1859 Samuel told him that the firm owed Daniel, that he had advanced $1,600.00 or $1,800.00 to Daniel, and had taken his notes as evidence of the amounts, and would give them up to Daniel when he (Samuel) and Jones could settle. Jones had also advanced money for the firm ; they agreed to see Daniel and have a full settlement, but before they did so Samuel died.

On the trial complainant read in evidence said common-law action and the pleadings aforesaid, and the interrogatories of E. H. Lundley and James Scott.

LUNDLEY testified that Samuel Scott said to him in December, 1857, and February, 1859, that he had advanced $6,000 for Scott & Jones, and Jones owed him half of it, that the firm owed Daniel Scott about $3,000.00 for cash advanced for it, that he had from time to time since the dissolution let Daniel have money, in all about $2,500.00 ; he said nothing about said understanding as to the notes, but said the notes were for borrowed money.

JAMES SCOTT testified that his brother Samuel, at their mother's sale, in December, 1867, said Scott & Jones owed Daniel, and he wished to settle the firm business and pay Daniel ; and in March, 1858, he said to James that he had let Daniel have money and took his note, and told him to sue Jones, but that Daniel would not sue, and he would force him to pay the note if he did not sue. James said to him

Scott *vs.* Scott, adm'x, &c.

that he was too hard on Daniel, that perhaps Daniel's papers were not in shape for suit, but Samuel said Daniel's claims were just, and if he would sue the firm the firm would settle.

JOHN SCOTT, another brother, swore that in 1858, at Conyers, Daniel showed him his account against Scott & Jones; John told Samuel of it, and he replied that the firm did not owe Daniel that much, because he had let Daniel have fifteen hundred or two thousand dollars.

Complainant also read in evidence the books of the firm so far as applicable to the matters in hand, and various notes, etc., which he had paid off, cotton receipts, etc.

He then offered in evidence the following papers, after proving the signatures :

"AUGUSTA, January 21st, 1851.
"$1924.63.

"One day after date we promise to pay to the order of Gould, Bulkley & Co., nineteen hundred and twenty-four 63-100 dollars for value received.

SCOTT & JONES."

Endorsed thus :

"Received, January 26, 1852, one hundred and sixty-eight 03-100 dollars, net proceeds eight bales cotton.        J. T. MITCHELL."

"Received, February 27th, 1852, nine hundred and sixty 74-100 dollars, per Mr. Scott."

"Received, October 7th, 1852, of Doughty & Beall, five hundred and thirty-three 48-100 dollars, as per receipt given them.

"Balance note $256.38, and interest $197.72=$454.10 paid February 14th, 1853.        GOULD, BULKLEY & Co."

"AUGUSTA, GA., September 21, 1851.
$488.48-100.

"Four months after date we promise to pay to the order of Gould, Bulkley & Co., four hundred and eighty-eight 48-100 dollars, at ———. Value received.        SCOTT & JONES, by D. SCOTT."

Endorsed thus :

"Note.............................$488 48
Interest......... ............... 36 47
                                 ————
                                 $524 95
"Paid Feb. 14, 1853.

"Amount credited on their note of April 9, 1851, at four months, twenty 95-100 dollars.
        GOULD, BULKLEY & Co.
*Memorandum :*
This note as above...$  524 95
Note of Jan. 21, 1851    454 10
Note of April 9, 1851     20 95
                        ————————
                        $1,000 00."

Scott *vs.* Scott, adm'x, &c.

"Augusta, April 9th, 1851.

"$986.20.

"Four months after date, we promise to pay to the order of Gould, Bulkley & Co., nine hundred and eighty-six 20-100 dollars, for value received.                    Scott & Jones, per D. S."

Endorsed thus :

"Received, February 14, 1853, per D. Scott, twenty 95-100 dollars. Received, February 14, 1853, per D. Scott, five hundred dollars, note given.   Balance note, $465.25 ; interest $151.98, (total $617.23).   Paid April 12, 1854, by Daniel Scott—paid with S. Scott's money."

"Augusta, February 14, 1852.

"Received of Mr. D. Scott five hundred dollars, which amount is credited on Scott & Jones' note of April 9, 1851.

GOULD, BULKLEY & Co., by A. C. BEAN."

"Augusta, June 13, 1853.

"Mr. DANIEL SCOTT :

*Dear Sir :*—Yours of yesterday is to hand, and we have enclosed bill of bale of Osnaburgs sent to-day to Conyers.   We also enclose account of sale of one bale Cotton sold May 19th.   The S.S. 7 bales Cotton of S. Scott referred to, we find by our books were sold October 6, 1852, at 10½c.   Cotton is in fair demand at low prices.   DOUGHTY & BEALL."

"Augusta, 22d June, 1854.

"D. SCOTT, Esq :

*Dear Sir :*—We are in due receipt of yours of the 20th inst., with the enclosure of $35.00, which is placed to your credit.   Below find statement of 7 bales Cotton sold October 6, 1852.

"Yours,                    DOUGHTY & BEALL.

S.S. 7 bales Cotton, weighing 2,814 lbs., at 10½c., $284.91, less charges $12.56.   Net proceeds $272.35."

"Augusta, Ga., October 20, 1851.

"$157.82.

"Six months after date we promise to pay to the order of Force, Conley & Co., one hundred and fifty-seven 82-100 dollars at their office. Value received.                    Scott & Jones, by DANIEL SCOTT."

"Augusta, Ga., May 11, 1852.

"$106.28.

"Six months after date we promise to pay to the order of Force, Conley & Co., one hundred and six 28-100 dollars at their office.   Value received.                    Scott & Jones, by DANIEL SCOTT."

"Augusta, Ga., June 4, 1852.

"$225.43.

"Ninety days after date we promise to pay to the order of Force, Conley & Co., two hundred and twenty-five dollars, at either of the banks in Augusta, Ga.   Value received.                    Scott & Jones."

Endorsed : "Force, Conley & Co."

"CHARLESTON, S. C., June 4, 1852.

"$264.14.

" Ninety days after date we promise to pay to the order of B. W. & J. P. Force & Co., at the Mechanics' Bank, at Augusta, two hundred and sixty-four 14-100 dollars, for value received.    SCOTT & JONES."

Endorsed thus:

"B. W. & J. P. Force & Co., per attorney F. A. Mitchell.    Pay Mechanics' Bank, of Augusta, Ga.    Augusta, August 26, 1852—Received on the within note two hundred and five dollars:

" Messrs. SCOTT & JONES to FORCE, CONLEY & Co., *Dr.*

" 1852.    May 12—To merchandize, $295.00.    Received payment,
FORCE, CONLEY & Co."

"AUGUSTA, GA., June 2d, 1851.

" $72.10.

" Six months after date we promise to pay to the order of G. W. Ferry & Co. seventy-two 10-100 dollars, at ———.    Value received.
SCOTT & JONES, by DANIEL SCOTT."

"Received, Augusta, Ga., May 11th, 1852, fifty dollars on the within note.                                G. W. F. & Co."

"AUGUSTA, GA., May 11th, 1852.

" $23.13-100.

" Six months after date we promise to pay to the order of G. W. Ferry & Co., twenty-three 13-100 dollars, at their store in Augusta.    Value received.                    . SCOTT & JONES, by D. SCOTT."

" Messrs. PARKER, SCOTT & Co.,
                    TO ADAMS, HOPKINS & Co.

| | | |
|---|---|---|
| 1848. | Nov. 27—To charge on Packages | $29 75 |
| 1852. | May 12—Interest to May 12 | 7 22 |
| 1853. | Feb. 14—Interest to February 14 | 1 54 |
| | | $38 51 |

Received payment,                    L. HOPKINS, per W."

" Messrs. SCOTT & JONES,
            In account with Messrs. ADAMS, HOPKINS & Co.

| | | |
|---|---|---|
| 1851. | April 12—Cash advanced you $1,000.00; Oct. 14th, cash advanced you, $500.00 | $1,500 00 |
| 1851. | Nov. 12—Cash advanced you, $500.00; Dec. 2, cash advanced you, $800.00 | 1,300 00 |
| 1851. | Dec. 2—Amount of draft, thirty days | 1,349 76 |
| 1851. | Dec. 23—Cash handed Mr. Scott, $1,000.00; 30th, acc't draft, thirty days, $1,000.00 | 2,000 00 |
| 1852. | Feb'y 27—Cash advanced | 550 00 |
| 1852. | March 6—One bale cotton 505—406 at 7½ | 30 45 |
| 1852. | March 23—Cash advanced $300.00; May 12, interest to date, $47.90 | 347 90 |
| | | $7,078 11 |

32

Scott *vs.* Scott, adm'x, &c.

PER CONTRA.

| | | |
|---|---|---:|
| 1851. | Nov. 9—By sales 28 bales cotton, $825.27; December 1, do. 46 bales cotton, $1,466.57............................ | 2,291 84 |
| 1851. | Dec. 5—By sales 16 bales cotton, $482.52; December 12th, do. 28 bales cotton, $902.06........................ | 1,384 58 |
| 1851. | Dec. 12—By sales 9 bales cotton, $306.05; December 30th, do. 18 bales cotton, $510.00........................ | 816 11 |
| 1852. | Jan. 22—By sales 30 bales cotton, $1,526.23; February 28th, do. 22 bales cotton, $715.48.......... ........... | 2,341 71 |
| 1852. | March 3—By sale 1 bale cotton, $28.42; March 5th, do. 2 bales cotton, $66.38.......... ...................... | 94 80 |
| 1852. | March 24—By sales 5 bales cotton, $128.08............... | 128 08 |
| 1852. | May 12—Balance............................................... | 120 99 |

$7,078 11

Balance brought down $120.99; interest from 12th May, 1852, to 14th February, 1854, $6.34=$127.33.

       Received payment,       L. HOPKINS, by T. J. FOGARTY."

"AUGUSTA, GA., July 9th, 1852.

"$32.17.

"One day after date we promise to pay to the order of Hopkins, Kolb & Co., thirty-two 17-100 dollars, at ———. Value received.

         SCOTT & JONES, by DANIEL SCOTT."

"AUGUSTA, October 24th, 1850.

"$95.00.

"Six months after date we promise to pay to the order of J. M. Newby & Co., ninety-five dollars, for value received.       SCOTT & JONES.

"Received on the within note fifty-seven 52-100 dollars June 2, 1851.

"Settled in full February 14th, 1853."

"AUGUSTA, GA., May 12th, 1852.

"$23.30.

"Six months after date we promise to pay to the order of Haviland, Risley & Co., at their office, twenty-three 30-100 dollars. Value received.       SCOTT & JONES, by DANIEL SCOTT."

"Messrs. SCOTT & JONES, Conyers,

           To HAVILAND, RISLEY & Co.

1852. February 27—To Mdze, $2.55.    Paid January 14, 1853.

          HAVILAND, RISLEY & Co."

"AUGUSTA, 14th February, 1853.

"Received of Messrs. Scott & Jones nine dollars and seventy-seven cents, being the amount of their account.      F. HOLMAN & Co."

"MOFFATT'S OFFICE, 336 Broadway, N. Y., ⎫
          · August 31st, 1852.    ⎬

"$30.00.

"Received of Messrs. Parker, Scott & Co., per Daniel Scott, thirty-three dollars, in full, for invoice forwarded September 16, 1848.

   For WM. B. MOFFATT, Proprietor.        J. SMITH."

Scott *vs.* Scott, adm'x, &c.

"Augusta, February 14, 1853.

"Received from Messrs. Scott & Jones six 67-100 dollars, for account of 1852. CARMICHAEL & BEAN."

"Augusta, January 9, 1854.

"Messrs. Scott & Jones in account with DUNHAM & BLAKELY.

1852. January 10—Bill of goods, $7.55; May 11th, do. $28.43; interest after six months, $2.95—$38.93. Due M. M. Bentley, on settlement, 85 cents. February 12, 1853. SCOTT & JONES,
Per W. R. GORDON."

"OCTOBER 30TH, 1849. Due B. Lumpkins, as a balance on cotton, four dollars. SCOTT & JONES, per J. R. RHODES.
Paid April 26, 1855, by D. SCOTT."

"Received of Elisha Wade one hundred and eight pounds of net tobacco, to be sold at thirty-seven cents per pound; and if not sold, to be returned when called for. February 10th, 1852.
SCOTT & JONES, by DANIEL SCOTT."

All these papers were rejected by the Court.

JOHN SCOTT further testified that Daniel sold a negro to his mother in 1853 or 1854, and got six or eight bales of cotton from her.

THOMAS F. JONES, defendant, swore substantially as he had answered, that he got the books of account from Samuel Scott's house after his death; Daniel's services as clerk were worth three hundred dollars per year, and he was their clerk almost as long as they did business.

Complainant closed.

Defendant read in evidence the notes sued on, three letters from Daniel Scott to Samuel Scott, and a letter from Doughty & Beall to S. Scott, a letter from Gould, Bulkley & Co. to Scott & Jones, and a note thereon from Daniel to Samuel Scott, etc., and also a bill in equity filed by Daniel Scott against the same parties and touching the same matters, which had been dismissed, in order to show contradictions in the statements by Daniel Scott. As to the materiality of these papers or their contents it is not necessary to say more.

The verdict was for the defendant. A new trial was moved for on the grounds that the Court erred in rejecting the said papers, in admitting an account of Daniel Scott due the estate of Samuel Scott, and the three letters from Daniel

to Samuel aforesaid, and the letter of Gould, Bulkley & Co. to Scott & Jones, with Daniel Scott's note thereon, and because the verdict was contrary to law, etc.

By consent, the case was held up for a time, and afterwards at Chambers the Chancellor refused a new trial, and for this error is assigned.

JOHN J. FLOYD, for plaintiff in error.

W. W. CLARK and C. PEEPLES, for defendant in error.

WARNER, C. J.

The error assigned to the judgment of the Court below in this case, is, in refusing the motion for a new trial upon the grounds specified therein. The complainant alleges that he was the confidential clerk of Scott & Jones, having the management of their mercantile business, and being authorized by them to wind up and settle the same, to collect the assets due *to the firm*, and to pay out of such assets the debts due *by the firm*—that as such confidential clerk, he paid out of his individual funds for the debts due by the firm of Scott & Jones, the sum of eighteen hundred and forty-two dollars and fifty-five cents, over and above the firm assets which were in his hands. Samuel Scott, one of the partners, was the brother of the complainant, and Jones, the other partner, was his brother-in-law. Samuel Scott, one of the partners, is now dead; but the complainant alleges, that before his death, he exhibited to him a true account of his receipts and disbursements on account of the copartnership business, which was admitted to have been correct, and that the partners, Scott & Jones, were indebted to him the sum of money before stated. Samuel Scott, in his lifetime, as the complainant alleges, reimbursed him for the money advanced for the firm by payments made at different times, but instead of giving receipts therefor he gave his notes, at the request of his brother, to enable him to have a settlement with Jones, the other partner; the notes thus given by the complainant were made payable to Samuel Scott, and since his death, suit has

been instituted thereon by his administratrix against the complainant, who filed his bill to enjoin the collection thereof, alleging in substance the foregoing facts.   On the trial of the cause, the main question involved, was, whether the firm of Scott & Jones was in fact indebted to the complainant as alleged for the payment of their debts out of his individual funds.   To make out his case, the complainant offered in evidence certain notes made by Scott & Jones, payable to Gould, Bulkley & Co., Force, Conley & Co., which were in his possession, and receipts for money paid by complainant to various persons for Scott & Jones, which are set forth in the record.   The admission of these papers in evidence was objected to by defendant, and the objection sustained by the Court.   In view of the facts of this case, we think these notes and receipts were admissible in evidence.   It is true, the fact that he has the papers in his possession, is not *conclusive* evidence that he paid them off with his own money, but it is a circumstance in his favor, which may be strengthened and supported by other evidence in the case.   We think it was *competent* evidence to be submiteed to the jury.

Although we should not have reversed the judgment on this ground alone, had we been entirely satisfied with the verdict rendered in this case, but in looking through the record, we are not satisfied that justice has been done to the complainant.   As there will be another trial in the cause, we will forbear expressing any opinion upon the facts involved in it.

Let the judgment of the Court below be reversed, and a new trial granted.