WYNN, SIMS & COMPANY *et al.*, plaintiffs in error, *vs.* JULIA T. A. FICKLEN, defendant in error.

1. There is but a slight presumption, if any at all, that forms and ceremonies prescribed by ancient statutes and not embraced in the Code, are still built upon by the legislature as part of our statute law.

2. Recent legislation, when silent in respect to one or more details requisite to practical working, will be construed as connecting itself with the Code, which is in daily use, rather than with old statutory provisions not codified, and which, by reason of great changes of the law in reference to the main subject matter, have ceased to be in perfect harmony with the general system of the present day.

3. The wife's consent to a conveyance of her husband's realty, to secure a debt, so as to vest title in his creditor until the debt is paid, need not be manifested in the form prescribed by the colonial act of 1760. It is sufficient that it be in writing and signed, with no more formality than is necessary under the Code in ordinary contracts concerning land.

4. Is consent to a deed which purports to convey the land for a consideration *paid*, the consent required, unless it be shown affirmatively that the wife knew the deed was intended to secure a debt? *Quære.*

5. Does not the statute contemplate that deeds of this character shall themselves express the object for which they are executed? *Quære.*

Laws. Presumptions. Construction of statutes. Husband and wife. Homestead. Debtor and creditor. Deeds. Before Judge POTTLE. Wilkes Superior Court. May Adjourned Term, 1875.

Reported in the opinion.

W. M. & M. P. REESE; F. H. COLLEY; W. W. SIMS, for plaintiffs in error.

D. M. DUBOSE, for defendant.

BLECKLEY, Judge.

In January, 1875, a wife applied for homestead in certain lands, as the property of her husband. Creditors of the husband entered a *caveat*, on the ground that neither she nor her husband had any title, but that the title was in them. The evidence made a case of indebtedness of the husband to these

creditors by promissory notes amounting to $3,000 00, dated in January, 1874, and due ten years after date, interest payable annually, with an absolute deed, of the same date, from him to them, expressing on its face a consideration of $3,000 00 *paid,* conveying the premises forever; and a bond for titles from them to him, conditioned to recovery on payment of the notes. None of the writings showed that the conveyance to the creditors was intended as security, but there was parol evidence to that effect, the debts secured being those covered by the notes mentioned above and specified in the bond for titles. Appended to the deed was a written consent, under seal, signed by the wife, and attested alone by the husband. By this instrument the wife declared, in terms, that she consented to the deed and approved of the conveyance thereby made.

1, 2, 3. It appears from the record that the court below held this consent insufficient because not verified in the manner prescribed by the act of 1760: Cobb's Digest, 161. Homesteads were quite unknown to our law at the date of this old statute. The act of 1871, (Code, section 1969,) which provides for conveying the legal title to property as security for a debt, simply requires the wife's consent; it does not require her to join in the conveyance, nor does it prescribe any form in which her consent is to be given. To resort to this old statute for the form, in the absence of some legislative hint that it was deemed applicable, would be to pay undue homage to antiquity; for the statute was not made for anything so modern and anomalous as the right of homestead. Nor is such a right within its terms, which embrace only those conveyances in which husband and wife must join in the deed itself. After signing the deed with her husband, she was to make the formal declaration which the statute prescribes. These requisites, including her signature to the deed, were, as the preamble to the statute shows, the substitute adopted in the colony of Georgia for the old English assurances by fine and recovery. The rights which they were intended to bar or divest were of a different nature from the

loose right to apply in the future for a homestead in the husband's general property : they were rights in respect to the specific land itself, which no possible disposition of it by the husband alone could defeat or abridge. One of them was the right of dower, which, as the law then stood, attached upon all lands of which the husband was seized during the coverture, whether alienated by him before his death or not. It is quite clear that the whole class of rights comprehended in the statute of 1760, namely, those requiring the wife's deed to pass them, (not merely her consent to the husband's deed,) stand unaffected by the act of 1871. It is not the purpose of this act to enable the husband, on the wife's consent, to part with lands by his own deed which he cannot legally convey absolutely without her consent. The sole object of the act is to enable him to pass, as security for a debt, the very same title to land which he could pass without her consent by ordinary bargain and sale for a consideration paid. She is called in, not to convey the land or any interest in it, nor even to surrender any right *in it* (for not yet having secured homestead in this identical land, her right to homestead has not attached *upon it,*) but to consent that her husband may convey thus for security only, what he has the unquestioned power and right to convey otherwise, independently of her consent. As the provisions of the old statute of 1760 took the place of fine and recovery, as practiced in England, a fair test of the question before us would be to suppose this vague, inchoate right of homestead pushed back into an age when fine and recovery flourished in full vigor. What would they have had to do with it? Nothing whatever. Fine and recovery always acted on claims and rights that adhered to the particular land in question, not on such as extended equally to all the property of a party, whether vested now or afterwards to be acquired. Whoever heard of a man's whole fortune, present and prospective, struggling through the tedious forms and processes of fine or recovery. A right or claim which stood to all the property of the kingdom as it did to each part of it, and to each part as to all, was

never the subject of these old methods of assurance. Such a right falls as far short of an interest or estate in specific property, as that of a creditor who has not yet acquired a lien. An examination of the declaration of consent provided for by the statute of 1760, will show that the consent there involved related in no way to her husband's act, but solely and exclusively to her own act. The wife did not declare that the husband entered into the conveyance with her consent, but that she herself did. The essence of the matter was, that the conveyance, as far as it was her own, was free and voluntary. But the act of 1871 is not upon the subject of conveyances by the wife, and therefore the declaration of consent required by the old statute is not in point. The difference in the two cases is as broad as that between a consent to carry on business on a joint capital, in partnership with another, and a consent that the other may conduct a similar business alone, with his own capital, on his own account. It would not be the least inconsistent to exact a much more formal and careful authentication of the former, than of the latter consent. It is rather a strain upon construction to go back one hundred and twelve years to find an old form not brought forward in any of the three editions of our Code, and engraft it upon legislation which was designed for daily use in the ordinary business transactions of the times. There is no good reason for making such a leap; the Code supplies a general rule for contracts in relation to land, which is simply that they shall be in writing and signed. It is going far enough, perhaps, indeed, farther than the way is plain, to connect the act of 1871 with this provision of the Code, and require to establish the wife's consent to a conveyance of her husband's land, the like evidence as would establish a contract on her part to convey her own. When it is remembered that the legal power of the husband to administer "moderate correction" has been done away, and the *status* of married women in respect to property has been so much changed, perhaps the truth may be that wives are far less subject to coercion than they were formerly. This may furnish a reason why our Code

points out no special means of scrutinizing their mental freedom.

4, 5. In reversing the judgment and granting a new trial we wish to be understood as limiting ourselves to the precise question ruled below. Doubtless in this or some other case under the same statute, there will be opportunity at a future time of hearing full argument upon several points of apparent difficulty which seem too grave for decision without argument. Among these are the two indicated, in the form of queries, at the head of this opinion. I will add, for myself, that I very much doubt whether, assuming all the estate in the creditors for which they contend, there is not still in the debtor a usufruct, at least, which they have no right to interfere with for ten years from the date of their notes and bond for titles. If this view be correct, that subordinate interest might, perhaps, be assigned as homestead, even on the present application. Should it turn out that the notes are met when the principal becomes due, there is a possibility that a homestead, even in the whole estate, may never harm the creditors. The question they now make upon title has, to me, the appearance of being premature. The homestead acts do not, in terms, provide for it: See 43 *Georgia*, 418; 34 *Ibid.*, 663.

Judgment reversed.