CHAMBERS *v.* THE STATE.

774

_J. B. G. Logan, Sam Kimzey, J. Herberl Griggs,_ for plaintiff in error.

_G. Fred Kelley, solicitor-general, John E. Frankum,_ contra.

BELL, Justice.   The Court of Appeals requested instruction on the following question:   "Where principals in the first and second degree and accessories before the fact are punishable alike, may one indicted for a felony as principal, under the Code, § 26-601, be convicted by a general verdict, as 'We the jury find the defendant guilty,' when the evidence shows that such one is absent when the crime was committed, but conspired with the principals to commit the crime?"   Immediately following the question, the court cited the Code, § 26-602, and numerous cases.

From the phraseology, and the authorities cited, we understand the question to be simply this:   Where as related to a particular felony the law prescribes the same punishment for an accessory before the fact that is prescribed for a principal, may a person be indicted and convicted _as a principal_ on evidence showing that he was absent when the crime was committed, but had conspired with another or others to commit the same?   As will be noticed, the question relates to felonies only, and not to misdemeanors. The law as we construe it requires an affirmative answer, notwithstanding some intimations and dicta to the contrary.

At common law, an accessory before the fact to a felony was deemed to have committed a crime separate and distinct from that committed by the principal, and could not be convicted of the latter or main offense merely because of his connection therewith as accessory.   1 R. C. L. 149-151, §§ 31-33, 8 R. C. L. 144, § 128; 22 C. J. S. 144, 442, §§ 80, 294.   Accordingly, one who was a mere accessory could be convicted only upon an indictment charging him as such; for then as now a person indicted for one offense could not be convicted of a different offense, unless it was included in the crime alleged.   _Watson_ v. _State,_ 116 _Ga._ 607 (43 S. E. 32, 21 L. R. A. (N. S.) 1).   We are thus brought to inquire whether such common-law distinction has been abolished in this State.

Under the very ancient common law, a similar distinction existed

between a principal in the first degree and a principal in the second degree; but, at least where the punishment was the same, this distinction appears to have been abolished long before our adopting statute of February 25, 1784, whereby the law of England, as it applied to Georgia on May 14, 1776, with certain qualifications, was declared to be of force in this State. Cobb's Digest, 721; *Boyd* v. *State,* 17 *Ga.* 194, 196; Reg. *v.* Wallis (1703), 1 Salk. 334, 91 Eng. Reprint, C. L. 294; 1 Chitty on Criminal Law (5th ed.), 256, 259; 1 Hale (1847), 436-437; 16 C. J. 125-6, § 112; 22 C. J. S. 152, § 85; 14 Am. Jur. 821, 831, §§ 76, 92.

Seemingly, however, the common-law distinction between an accessory before the fact and a principal was still in existence in that country at the time of our adopting statute; and while this statute "adopted the English common law and the old English statutes . . only where applicable to our people in this new country, and the circumstances surrounding them here" (*Turner* v. *Thompson,* 58 *Ga.* 268, 271, 24 Am. R. 497), for present purposes we may assume that the English rule as to an accessory did become a part of the Georgia law in virtue of such statute. The question, then, is whether such distinction continues to exist in this State; and this requires an examination of the early criminal statutes and penal codes, as adopted by our own law-making body.

Although the Code of 1863 is often referred to as the first official code, it is correctly so described only in the sense that it was the first general code. In the year 1811 the legislature adopted a criminal code, but it was not to become effective until proclaimed by the Governor after completion of "a suitable penitentiary edifice." No such proclamation was ever made, and the act adopting it was repealed in 1818. Ga. L. 1811, p. 26; Ga. L. 1818, p. 192; Lamar's Compilation of Georgia Laws, 1810-1819, pp. 540-552, 656.

Next came the Penal Code of 1816, as adopted by the General Assembly in December of that year. This code also was to be proclaimed by the Governor; and it was proclaimed, although it remained of force for only about two years, the act in reference to it having been repealed at the same time as the act of 1811. Ga. L. 1816, pp. 142-201; Prince's Georgia Digest (1821), p. 344. In the meantime, the legislature passed the act of December 20, 1817, "to amend the Penal Code of this State," which act became of force

on its approval by the Governor on that date. This act, while called an amendment, virtually constituted a new Penal Code, since it included most of the matter which had been embodied in the Code of 1816. If it did not altogether supersede the former Code upon its enactment, it became the only Code extant upon approval of the act of 1818, repealing the acts of 1811 and 1816, as stated above. Ga. L. 1817, pp. 92-143; Lamar's Compilations, pp. 611-655; Prince's Georgia Digest (1821), 344-377.

The Code of 1817, with amendments adopted from time to time, remained in force until passage of the act of December 23, 1833, entitled "An act to reform, amend, and consolidate the penal laws of the State," and providing that the existing Code should continue in effect until June 1, 1834. Ga. L. 1833, pp. 243-247; Prince's Georgia Digest (1837), 619-671; Cobb's Digest, 778-845. Thus, the General Assembly adopted what was known as the Penal Code of 1833, and what has also been erroneously referred to as the first Code.

In 1850 the Honorable Howell Cobb, of Houston County, compiled a code which is known as "Cobb's Penal Code," but that Code was never adopted by the General Assembly. Next came the Code of 1863, which embodied both criminal and civil law, and was adopted by the General Assembly as the first general Code of this State. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831, 836-42 (31 S. E. 531, 42 L. R. A. 518).

Seemingly the Codes of 1816 and 1817 were considered as repealing the criminal common law, adopted by the act of 1784, only in so far as it was in conflict therewith; but the Code of 1833, being more comprehensive, has been regarded as an exclusive declaration of what acts would constitute criminal offenses in Georgia at that time; and so it has been said, that, since the adoption of that Code, "it has been the uniform understanding that we had no *crimes* in this State save such as were defined and punished in the Code." *White* v. *State,* 51 *Ga.* 285; *Thrower* v. *State,* 117 *Ga.* 753 (45 S. E. 126); *Jenkins* v. *State,* 14 *Ga. App.* 276, 278 (80 S. E. 688). Thus, in deciding the question propounded, it should be remembered that while the common-law terms "principal" and "accessory" are contained in our statute law, we have in this State, and have had at least since the act of 1833, only statutory offenses; also, that while these terms are defined in the Code substantially

as they were understood at common law, the definitions were expressly enacted into law by our own legislature, and therefore are to be treated as statutory definitions.

Let us now examine the law as contained in the present Code, and then compare the earlier statutes in so far as they may shed light upon its meaning. For this purpose, it seems, we may proceed more easily by reversing the order of the foregoing citations; and this course will be pursued. The following provisions appear in the present Code: "A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." § 26-201. "A person may be principal in an offense in two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present, aiding and abetting the act to be done; which presence need not always be an actual, immediate standing by, within sight or hearing of the act; but there may be also a constructive presence, as when one commits a robbery, or murder, or other crime, and another keeps watch or guard at some convenient distance." § 26-501. "A principal in the second degree, except where it is otherwise provided, shall receive the same punishment that is provided for the principal in the first degree." § 26-502. "An accessory is one who is not the chief actor in the offense, nor present at its performance, but is some way concerned therein, either before or after the act committed." § 26-601. "An accessory before the fact is one who, though absent when the crime is committed, procures, counsels, or commands another to commit same." § 26-602. "An accessory before the fact, except where it is otherwise provided, shall receive the same punishment that is prescribed for the principal in the first degree." § 26-603. "An accessory after the fact is a person who, after full knowledge that a crime has been committed, conceals it, and harbors, assists, or protects the person charged with or convicted of the crime." § 26-604. "Accessories after the fact, except where it is otherwise provided, shall be punished as for a misdemeanor." § 26-605. "An accessory before or after the fact may be indicted, tried, convicted, and punished, notwithstanding the principal offender may have been pardoned or otherwise discharged after his conviction, or can not be taken so as to be prosecuted and punished." § 26-606.

All of the foregoing provisions were contained in the Codes of 1910 and 1895, just as they have been quoted, with a few exceptions which it is thought are not material to the question here presented. The same provisions were contained in the Codes of 1863 and 1833, the language being the same in these two Codes, and being also substantially the same as in the later Codes, with one exception which is deemed important, namely: Instead of the two sections which now appear as § 26-502 and § 26-603, providing separately for punishment of a principal in the second degree and an accessory before the fact, the punishment for both was prescribed in a single section reading as follows: "A principal in the second degree, and an accessory before the fact, except where it is otherwise provided for in this Code, shall receive the same punishment as is directed to be inflicted on the principal in the first degree, or perpetrator of the crime." Section 5, second division, Penal Code of 1833, Ga. L. 1833, p. 146; Cobb's Digest, 781; Code of 1863, § 4208. It is unnecessary to refer to the Codes of 1868, 1873, and 1882, as these were never adopted by the General Assembly. *Central of Georgia Railway Co.* v. *State,* supra.

The Codes of 1816 and 1817 did not deal generally with accessories and principals, as did the later Codes, but they did contain a definition of an accessory before the fact, which would seem to be enlightening in this connection. It was declared that "An accessory is he who stands by, aids, and assists, or who not being present, aiding, abetting, or assisting, hath advised and encouraged the perpetration of the crime. He or she, who thus aids, abets or assists, or advises or encourages, shall be called a principal in the second degree." Ga. L. 1816, p. 145; Ga. L. 1817, p. 74; Lamar's Compilations, 566, 613. While the provision as to punishment was somewhat different in the act of 1816, the act of 1817 declared that "Accessories, or persons aiding, advising, or assisting in and to the perpetration of offenses, where the punishments are not provided for in this Code, shall be punished in the following manner: Accessories, before the fact; aiders, abettors, or advisors, shall receive the same punishment as is directed to be inflicted on the principals." Ga. L. 1817, p. 134; Prince's Georgia Digest (1821), 370.

In view of these various Codes and statutes, can it be said that the distinction between the offense of an accessory before the fact

and that of the principal actor, as it existed at common law, is still recognized in the law of Georgia, where the punishment is the same under the applicable statutes? While the General Assembly, in defining accessories and principals in the act of 1833 and in later Codes substantially as they were defined at common law, may have intended to retain the common-law distinction to which we have referred, a construction to that effect is not demanded; and especially is this true in view of the acts or Codes of 1816 and 1817, in which it was declared that an accessory before the fact "shall be called a principal in the second degree." The question is, not whether a statute in derogation of the common law as already existing in this State shall be strictly construed, but whether, after abolishing the common-law distinction, as was effectually done by the acts of 1816 and 1817, the legislature, in redefining an accessory before the fact in substantial accord with the common law, intended also to re-establish what it had formerly laid aside as a cumbersome and illogical appendage. The common-law distinction referred to was always more fanciful than real, and tended at times to miscarriage of justice, if not to absurdity. 16 C. J. 200, § 301; 14 Am. Jur. 838, § 105. Such being its nature, there is but slight if any presumption that the General Assembly intended to re-instate it as a part of the criminal law of this State. As to construction, see *Wynn* v. *Ficklen,* 54 *Ga.* 529; *Turner* v. *Thompson,* 58 *Ga.* 268 (supra); *Gillis* v. *Gillis,* 96 *Ga.* 1, 9 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121). It seems that the definition of an accessory as expressed in the act of 1833, and followed in later statutes, should be construed in harmony with the acts of 1816 and 1817, where an accessory before the fact and a principal in the second degree were expressly placed in the same class; and especially so as it was also declared in the same act (1833) that, except as otherwise provided, they should receive the same punishment as the principal in the first degree or actual perpetrator. Were not all of such parties thus placed in the same category, where under the applicable statutes they were punished alike?

While it has been held by some courts that statutes which merely subject accessories before the fact to the same punishment as principals do not destroy the distinction between the offenses committed by them, yet, as shown in the foregoing resumé, the question here does not depend upon such legal circumstance, but other provisions of law are to be considered. See 22 C. J. S. 146-8, § 82.

Although we have found no decision by this court, and only one by the Court of Appeals, declaring in express terms that there is in this State no separate offense of being an accessory before the fact, there are, from the two courts combined, numerous decisions leading directly to that conclusion, and some that could not possibly have been rendered as they were, upon any other premise. Let us note this trend and implication, as we examine the cases.

In view of the Code, § 26-502, supra, prescribing, except as otherwise provided, the same punishment for principals in the first degree as for principals in the second degree, it has been held in numerous cases that where they are punished alike, no distinction between them need be made in the indictment. *Lowe* v. *State,* 125 *Ga.* 55 (4) (53 S. E. 1038) ; *McLeod* v. *State,* 128 *Ga.* 17 (3) (57 S. E. 83) ; *Bradley* v. *State,* 128 *Ga.* 20 (3) (57 S. E. 237) ; *Lewis* v. *State,* 136 *Ga.* 355 (2) (71 S. E. 417) ; *Kent* v. *State,* 172 *Ga.* 905, 906 (159 S. E. 238) ; *Screws* v. *State,* 188 *Ga.* 678 (4 S. E. 2d, 601). Under this rule, a principal in the second degree may be convicted on an indictment charging him as a principal in the first degree. *Hatcher* v. *State,* 176 *Ga.* 454 (5) (168 S. E. 278) ; *Hansford* v. *State,* 54 *Ga.* 55 (2).

In view of the similar provisions as to punishment of accessories before the fact (Code, § 26-603), and the other laws to which we have referred, it would seem to be true also that where accessories before the fact and principals are punished alike, a person may be indicted and convicted as a principal on evidence showing his relation as an accessory before the fact. Although in such case the accessory would be technically both an accessory before the fact and a principal, the former by reason of his actual absence, and the latter by his constructive presence through an agent, such dual relation would be immaterial, the punishment being the same, and the facts being such as would make him guilty either as an accessory before the fact or as a principal. In *Collins* v. *State,* 88 *Ga.* 347 (14 S. E. 474), it was held: "One indicted as principal merely can be convicted on evidence proving him guilty as principal in the second degree, if the facts be such as that the act by which the crime was perpetrated will, on established principles of law, be imputed to him as committed by himself through the agency of another." While that decision, like the others to which we have referred, dealt with the question as related to principals in the

first and second degrees, it is predicated on the rule of agency, which it seems would apply with equal force as between a technical accessory before the fact and a principal in the first degree.

Where individuals enter into a conspiracy to commit a crime, its actual perpetration by one or more of them in pursuance of such conspiracy is in contemplation of law the act of all, and therefore is imputable to all, regardless of their presence or absence at the time it is committed. *Nelson* v. *State,* 187 *Ga.* 576 (2), 580 (1 S. E. 2d, 641); *Johnson* v. *State,* 151 *Ga.* 21 (2) (105 S. E. 603); *Hill* v. *State,* 28 *Ga.* 604, 606; *Horton* v. *State,* 66 *Ga.* 690; *Handley* v. *State,* 115 *Ga.* 584 (41 S. E. 992).

In *Pinkard* v. *State,* 30 *Ga.* 757 (3), 759, it was said: "It is certainly true, that if the defendant had no participation in the theft until after the negroes were stolen, he was an accessory after the fact only. If, however, the felony was concocted between the parties previously, he would, in that case, be a principal. One need not be present when a crime is committed to constitute him a principal." In that case the larceny charged constituted a felony under the statute. Cobb's Digest, 793; Code of 1863, § 4305. This *Pinkard* case is direct authority on the question presented, and, being a unanimous decision, must be followed as a precedent, as against subsequent conflicts. As a matter of fact it is controlling upon the question propounded, but in view of the confusion caused by certain later decisions, some further discussion would seem to be necessary. Along with that case, see *Griffin* v. *State,* 26 *Ga.* 493, 497-498; *Minor* v. *State,* 56 *Ga.* 631, 633. The distinction as it existed at common law is brought out clearly in decisions and texts relating to former jeopardy, the common-law rule as to this being, that, since the offense of an accessory before the fact and that of the principal are separate and distinct crimes, and not merely different degrees of the same crime, an acquittal of one indicted as such an accessory does not bar his subsequent prosecution as a principal, and vice versa. 8 R. C. L. 144, § 128; 22 C. J. S. 442, § 294; State *v.* Larkin, 49 N. H. 36, 6 Am. R. 456; State *v.* Buzzell, 58 N. H. 257, 42 Am. R. 586; Commonwealth *v.* DiStasio, 297 Mass. 347 (8 N. E. 2d, 923, 113 A. L. R. 1133). The rule is different, however, where such distinction has been abolished. 16 C. J. 281, § 478; 22 C. J. S. 294; U. S. *v.* Buckner, 37 Fed. 2d, 378, 381; Ex parte Resler, 115 Neb. 335 (212 N. W. 765).

While it seems that this court has never approached the question as to identity of offense from the standpoint of former jeopardy, we have, aside from the *Pinkard* case, supra, considered it in connection with other problems, especially in defining an accomplice whose testimony may require corroboration, under the Code, § 38-121. The decisions on that subject, considered together, show clearly that those treating an accessory before the fact and a principal as accomplices were necessarily based on the theory that under the Georgia law, where the accessory and the principal are subject to the same punishment, there is no separate crime of being an accessory before the fact, but that such accessory and principal are guilty of one and the same offense, and guilty alike, the mere manner of its commission being the only difference. *Springer* v. *State*, 102 *Ga.* 447 (30 S. E. 971); *Slone* v. *State*, 118 *Ga.* 705 (45 S. E. 630, 98 Am. St. R. 145); *Birdsong* v. *State*, 120 *Ga.* 850 (48 S. E. 329) *Kearce* v. *State*, 178 *Ga.* 220 (2) (172 S. E. 643); *Street* v. *State*, 179 *Ga.* 636 (2) (176 S. E. 633); *Lanier* v. *State*, 187 *Ga.* 534, 539 (1 S. E. 2d, 405); *Mills* v. *State*, 193 *Ga.* 139 (3) (17 S. E. 2d, 719). See generally as to identity of offenses and former jeopardy, *Harris* v. *State*, 193 *Ga.* 109 (17 S. E. 2d, 573); *Usary* *v.* Tennessee, 172 Tenn. 305 (112 S. W. 2d, 7, 114 A. L. R. 1401).

It has been held that every statutory felony, when incorporated into the criminal law, becomes subject to existing regulations as to accessories, indictment, evidence, and procedure. *Bishop* v. *State*, 118 *Ga.* 799 (45 S. E. 614). It therefore appears that our law as to accessories before the fact is generally to be treated as a mere rider on other penal statutes, describing a possible reltionship or status, and not creating a separate offense. In *Welch* v. *State*, 49 *Ga. App.* 380 (175 S. E. 598), it was said that there is no separate crime of being an "accessory before the fact" in Georgia; and as leading necessarily to the same conclusion, see *Strickland* v. *State*, 45 *Ga. App.* 359 (164 S. E. 450); *Arnold* v. *State*, 62 *Ga. App.* 506 (8 S. E. 2d, 723). Moreover, even as an original proposition it would seem that no other conclusion would well be reached in view of the expressions "the offense," "the crime," "commit same," "the principal offender," and the provisions as to punishment, in the statutes quoted above, and in view also of the early provision to the effect that "an accessory before the fact shall be called

a principal in the second degree." We therefore conclude that these statutes did abolish the common-law distinction between accessories before the fact and principals, where they are subject to the same punishment under the law.

At this point we may interpolate, that the distinction was abolished in England even before the Georgia act of 1833, supra, but not before the act of 1784, whereby we adopted generally the common and statute law of the mother country. That is to say, in the year 1826 it was enacted by Parliament that accessories before the fact may be indicted and convicted of the principal felony, whether the principal felon shall or shall not have been convicted, or shall not be amenable to justice and punished accordingly. 7 Geo. 4, c. 64, § 9 (May 26, 1826); 1 Chitty on Criminal Law (5th ed.), 267. The same provisions were substantially repeated in later statutes as follows: 11 & 12 Vic. c. 46, s. 1 (Aug. 14, 1848); 24 & 25 Vic. c. 94 s. 1 (Aug. 6, 1861); both cited in People v. Bliven, 112 N. Y. 79 (19 N. E. 638, 641, 8 Am. St. R. 701).

In jurisdictions where statutes abolishing such distinctions have been enacted, it is generally held that although one may occupy the technical relation of accessory before the fact, he may yet be indicted and convicted as a principal. 31 C. J. 740, § 290; 14 Am. Jur. 833, § 96; State v. Whitman, 103 Minn. 92 (114 N. W. 363, 14 Ann. Cas. 309); People v. Bliven, 112 N. Y. 79 (supra); Commonwealth v. Mendola, 294 Pa. 353 (144 Atl. 292). There are, however, some decisions to the contrary. For example, see State v. Jennings, 158 S. C. 422 (155 S. E. 621).

As to indictment, the Code of Georgia declares that "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury." § 27-701. This provision also came from an early statute, being a part of the Penal Code of 1816, where, as in every intermediate Code, it appeared in the identical language above quoted. Ga. L. 1816, p. 192.

From what has been said above as to the substantive law, and from the facts shown in the question certified, it is seen that although there was a conspiracy among at least three persons, only one *offense* was committed; and this is true even though one of the conspirators may have been absent at the time of its commission.

Such being the case, the only *imperative* law as to indictment is that embodied in the Code, § 27-701; and according to the plain language of that section, it requires only that the *offense* shall be stated, not the rôles played by the several actors, such for instance as that of an accessory. In *Studstill* v. *State,* 7 *Ga.* 2 (11), it was held that all technical exceptions to indictments, *which would be good at common law,* are unavailing under the Penal Code, provided the offense is charged in the terms and language of the Code, or so plainly that the nature of the offense charged may be easily understood by the jury. With possibly a few exceptions, such has been the tenor of all of the Georgia decisions, on sufficiency of indictments.

While under our law it is still *permissible* to proceed against accessories before the fact, by expressly alleging the relationship, and this is often if not generally done, yet where the punishment is the same as that prescribed for the principal, then, just as in case of principals in the first and second degrees, no distinction need be made in the indictment. It has been repeatedly held by this court that a conspiracy may be proved, though not alleged in the indictment or accusation. *Dixon* v. *State,* 116 *Ga.* 186 (8) (42 S. E. 357); *Whitaker* v. *State,* 159 *Ga.* 787 (5) (127 S. E. 106); *Johnson* v. *State,* 188 *Ga.* 771 (3) (4 S. E. 2d, 639); *Harris* v. *State,* 190 *Ga.* 258 (4 a) (9 S. E. 2d, 183); and see also *Loeb* v. *State,* 6 *Ga. App.* 23, 27 (64 S. E. 338); 31 C. J. 740, § 290; 27 Am. Jur. 655, § 95.

Having thus stated what we consider the law to be, we will now notice certain decisions which might seemingly point to a contrary conclusion, but which for reasons to be shown do not constitute authority on the question. The language in *Hately* v. *State,* 15 *Ga.* 346, tending to an opposite view, was clearly obiter, and was so declared by this court in *Kinnebrew* v. *State,* 80 *Ga.* 232 (5 S. E. 56). Compare *Loeb* v. *State,* 6 *Ga. App.* 23, 27 (supra). In *McCoy* v. *State,* 52 *Ga.* 287 (3), it was held that on the trial of an indictment charging a defendant as principal, he can not be convicted as an accessory after the fact. It does not appear from the report whether the offense was a felony or a misdemeanor; but treating the decision as being correct as applied to its facts and the grade of offense involved, we think it is not in point here, since it dealt with an accessory *after* the fact,

and not with an accessory before the fact, as now considered. Compare *Kinnebrew* v. *State,* 80 *Ga.* 232 (supra); *Collins* v. *State,* 88 *Ga.* 347, 350 (supra); *Johnson* v. *State,* 151 *Ga.* 21 (2) (105 S. E. 603). Nor did *Tarpe* v. *State,* 95 *Ga.* 457 (20 S. E. 217), involve any question as to an accessory before the fact.

The decision in *Minor* v. *State,* 56 *Ga.* 631, is ambiguous. Perhaps the court thought there was no evidence to show whether the property had been stolen at the instance of the accused; and if so, the words "with or without his procurement," would furnish the key to that decision. This, however, is not important, because if anything that was there held should be contrary to our present ruling, it is in like manner contrary to the controlling decision in *Pinkard* v. *State,* 30 *Ga.* 757 (3, 4), supra, and can not be followed.

In *Riggins* v. *State,* 116 *Ga.* 592 (42 S. E. 707), it was held that "An indictment charging one with the offense of being an accessory before the fact to the offense of simple larceny (a felony), in that he did counsel, command, and procure another to commit such larceny, is not supported by evidence showing that the person so accused was himself guilty as the absolute perpetrator of the offense; and in the absence of evidence sufficient to show that the accused did so counsel, command, or procure the commission of the crime as charged a verdict of guilty is not supported." In that case the defendant was indicted specifically as an accessory before the fact, and not as a principal, and the real question presented was whether the evidence supported the charge as laid in the indictment. The State, having charged the accused as an accessory, was not entitled to a verdict without proving its case as thus alleged. Seemingly the decision was finally placed on that ground, although in the opinion it was stated that a "principal in the first degree commits an entirely distinct offense from that of an accessory before the fact, and one indicted as an accessory can not be convicted on evidence proving him to be 'present aiding and abetting at the fact.'" The citations included a work on "Crown Law," and, as we have seen, the quoted statement was incorrect under the Georgia statutes. The statement may have been obiter; but even if not, the decision was rendered by only four Justices, two not participating, and therefore it is not a binding precedent. The decision also would yield to the *Pinkard* case to the extent of any conflict. As to necessity of proving what is alleged, see *Fulford*

v. *State,* 50 *Ga.* 591; *Paschal* v. *State,* 125 *Ga.* 279 (54 S. E. 172). In *Carter* v. *State,* 106 *Ga.* 372 (4) (32 S. E. 345, 71 Am. St. R. 262), the court did not actually reach the question as to what was "the true law," although intimating that the old rule still existed in this State; the ruling there having turned on whether a requested instruction was sufficiently covered by the charge as given. The decision contains nothing in actual conflict with the conclusion here announced.

While the old practice may still continue rather generally in this State, yet, from what has been shown above as to the statutes and decisions, we think it has merely lingered from the common law as the result of habit and bent of mind, and that it is not and has not been for many years a legal requirement. Again, let us not be confused by the decisions as to how, if the pleader so elects, an accessory *may be* indicted. *Bulloch* v. *State,* 10 *Ga.* 47 (6) (54 Am. D. 369); *Loyd* v. *State,* 45 *Ga.* 57, 71; *Rawlins* v. *State,* 124 *Ga.* 31 (3, 4) (52 S. E. 1); *Snell* v. *State,* 13 *Ga. App.* 158 (79 S. E. 71). Nor should we be led astray by the rule that where one is actually indicted as an accessory, he can not ordinarily be put on trial until after conviction of the principal. This is a mere regulation affecting the trial of one indicted as an accessory, and it will not apply to a party not so indicted. We borrowed this rule by statute from the common law; and where the State elects to follow it and to indict as at common law, it thereby assumes the burdens of such procedure. The rule has no other significance. Ga. L. 1873, p. 28, Code, § 26-606; *Smith* v. *State,* 46 *Ga.* 298; *Harris* v. *State,* 191 *Ga.* 243 (6), 251 (12 S. E. 2d, 64).

In *Kinnebrew* v. *State,* 80 *Ga.* 232, 236 (supra), Chief Justice Bleckley, speaking of our criminal law, observed "that courts, even when they have the earliest and best opportunity, rarely struggle to get away from the common law, but delight in clinging to it like young children to their mother's breast." It was this same inclination which created the condition to which Chief Justice Fish referred in the following statement: "The truth is that the keeping up of the distinction between principals in the first and second degree and principals and accessories before the fact, where they are all punished alike, is an archaic technicality and, as Mr. Bishop declares, 'a crystalized blunder.'" *Cantrell* v. *State,* 141 *Ga.* 98, 103 (80 S. E. 649). But none of such judicial pronouncements

repealed or could repeal the legislative enactments which have been quoted. Nor, so far as we have been able to discover, is there any decision which has *authoritatively* construed them so as to justify a different answer to the present question.

Inasmuch as we have mentioned accessories *after* the fact, it may be further observed that a different rule has been laid down as to such accessories, so far at least as felonies are concerned. That is to say, under our statutes, the offense of an accessory after the fact is a separate crime from that of the principal. *Pat* v. *State,* 116 *Ga.* 92 (42 S. E. 389); *Tarpe* v. *State,* 95 *Ga.* 457 (supra); *Lanier* v. *State,* 141 *Ga.* 17 (2) (80 S. E. 5); *Birdsong* v. *State,* 120 *Ga.* 850 (supra); *Mills* v. *State,* 193 *Ga.* 139 (3), 148 (17 S. E. 2d, 719). This would necessarily be true from a logical standpoint, because, in order for one to be an accessory *after* the fact, the main offense must be complete before he takes hold; otherwise he would be a principal. 1 R. C. L. 152, § 34; 27 Am. Jur. 656, § 96.

Finally, it may not be amiss to say that although this court has often gone to the common law for aid in criminal cases, both as to construction of the substantive law and as to procedural questions, and it has been entirely proper to do so, yet since our substantive criminal law is contained only in our own statutes, and since our lawmakers have also declared what shall be sufficient as an indictment, we may on these particular questions resort to the common law only as persuasive authority, just as we would consult the adjudications of any jurisdiction in seeking light on a given question. This is not to say that we have abolished the criminal law as to *all* procedural questions; but it is merely an observation as to the background that should be kept in mind both in studying the former decisions and in considering new cases as they arise.     *Answered in affirmative.   All the Justices concur.*