44418. TALLEY v. THE STATE.
44419. SHEPHERD v. THE STATE.

ARGUED APRIL 8, 1969—DECIDED SEPTEMBER 3, 1969— REHEARING DENIED SEPTEMBER 24, 1969.

*Howard Moore, Jr., Peter E. Rindskopf,* for appellants.
JORDAN, Presiding Judge. ■ As restated in the briefs for the

appellants the evidence adduced at the hearing discloses that the grand and traverse jury lists of Spalding County were revised in final form in August of 1968 by a commission composed of five white men and one Negro man. These lists show 359 names for grand jurors and 1,276 names for traverse jurors, of which, as identified by the local head of the NAACP, 65 names on the grand jury list were Negroes, and 151 names on the traverse jury list were Negroes, i.e., 18.1% Negroes on the grand jury list and 11.8% on the traverse jury list.[1] The population of Spalding County over age 21 in 1960, based on United States census figures, of which the court took judicial notice, consisted of 18,576 white persons and 4,803 non-white persons, a non-white adult population in 1960 of 20.6%. In 1966 there were 11,122 registered white voters and 3,078 registered Negro voters, Negroes representing 21.6% of the total then registered. The registrar testified that subsequently there had been some increase of white and Negro voters, but he provided no figures. In August of 1968 an integrated list was compiled, which he furnished to the jury commission. The jury commission had access to the old jury list, which had been compiled from a voters' list. Every person placed on the new jury lists was known personally by at least one commissioner, but neither of the two testifying was able to state the number of Negroes on the lists.

The transcript of the evidence at the hearing shows additionally that the two members of the jury commission who testified, the Negro member and one white member, who served as chairman, stated with some particularity the instructions they received and the methods they used. The Negro member, age 83 and a resident of the county since 1896, testified that the court instructed them to examine the voters' list. He also recalled that they used a telephone list and a city directory to check addresses. The white member testified that they received a copy of the 1967 law (Ga. L. 1967, p. 251) and were told to follow it and to have a good cross-section of the entire county. The old jury lists were used, along with other

---

[1]We note from the record that three of the jurors (25%) empaneled to try the defendant Shepherd were Negroes.

sources, to determine the latest address, but otherwise they were not used to make up the new lists. He did not know whether all names on the old lists were on the new lists. The new lists included school teachers, who had been excluded previously. In compiling the jury lists someone would call out a name, whoever knew him would speak up, and if that commissioner considered the person qualified he would say, "Would make a good juror," but if anyone else had another opinion there was a discussion. The chairman testified that the Negro member knew as much about people in Griffin, Georgia, Spalding County, as any man in the county, regardless of race, and that he was very active in participating in the work of the commission. The chairman also stated positively that the jury lists were made up of names that were on the voters' list for the last general election, and that in his opinion the persons on the lists were a representative cross-section of upright and intelligent citizens of the county.

The 1967 statute requires the jury commissioners to compile and maintain a jury list composed of a fairly representative cross section of upright and intelligent citizens of the county from the official registered voters' list used in the last preceding general election, and, if this is not possible from this list alone, to supplement this list by going out into the county and personally acquainting themselves with other citizens including upright and intelligent citizens of any significantly identifiable group which may not be fairly represented, and to select a number, not exceeding ⅖ths of the whole, to serve as grand jurors. Ga. L. 1967, p. 251. The superseding statute of April 1, 1968, differs from the 1967 statute, but not from earlier law, by requiring that the commissioners shall select from the jury list to serve as grand jurors the "*most* experienced, intelligent and upright citizens." Ga. L. 1968, pp. 533, 534 (*Code* § 59-106, as amended). The appellants here, however, do not seek to draw any distinction based on differences in the 1967 and 1968 statutes with respect to grand jurors, but assert their claim as one of racial discrimination, in failing to follow the mandate of the Georgia law, and in violation of constitutional due process and equal protection standards.

The decisive issue in *Woods v. State,* 117 Ga. App. 546 (160 SE2d 922), was that of a premature ruling of the trial court based on insufficient evidence. This issue is absent from the present cases, for here the appellants, as the defendants in the lower court, were accorded ample opportunity to adduce evidence of the results of the compilation of the jury commissioners, and the appellants point to the results as prima facie and unrebutted evidence indicative of a failure to select a representative cross section of intelligent and upright citizens, including Negroes as a significantly identifiable group. The prima facie unrebutted results in Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599) disclose a gross and unexplained disparity, for in the county where that case was tried, Negroes comprised 45% of the population (42% of males over 21) and 27.1% of the tax digest from which the jury lists were compiled, but only 9.1% of the grand jury venire and 7.8% of the traverse jury venire were Negroes. In Vanleeward v. Rutledge, 369 F2d 584 (5th Cir.), a gross and unexplained disparity appeared in Muscogee County, for although the county had an adult population 30% of whom were Negroes, the jury list showed only .75% Negroes. The case of Jones v. Georgia, 389 U. S. 24 (88 SC 4, 19 LE2d 25) also involved a gross and unexplained disparity, a jury list and box comprised of 5% Negroes in a county with a Negro population over 21 of 30.7%, and in which Negroes were 19.7% of the taxpayers.

The proposition, however, that a defendant in a criminal case is entitled to a proportionate number of his race on the jury which tries him, or that the venire or jury list accurately reflect the proportionate strength of every identifiable group was expressly rejected in Swain v. Alabama, 380 U. S. 202, 208 (85 SC 824, 13 LE2d 759). In that case it is also made clear that the challenger must establish by satisfactory evidence *purposeful racial discrimination,* even if the figures are not proportionate. We consider this limited by the Whitus case and similar cases only to the extent that a *gross* and *unexplained* disparity may be sufficient alone to demonstrate such discrimination.

We think the evidence as a whole in this situation reveals a conscientious and determined effort on the part of the jury com-

missioners to select a representative cross section of upright and intelligent citizens to serve as jurors, and while we recognize that the results reached are not in *exact* proportion to the number of Negroes in the county who comprise a significantly identifiable group, we do not regard the disparity as so disproportionate as to warrant a conclusion, either alone, or considered with the other evidence, of purposeful racial discrimination in compiling the jury lists. While the Whitus case and other cases, supra, disclose only *token* representation of Negroes as an identifiable group, the representation of Negroes on the lists here involved is substantial, and although each person selected was personally known to at least one commissioner, who identified the person to the entire commission, and thus could provide the commission with identification of the person by race or color, there is absolutely nothing in the evidence to disclose that a single person was purposefully included or eliminated because of race or color. The voters' list of the last general election, composed of 21.6% Negroes, as compared to an adult population in 1960 of 20.6%, discloses prima facie that the commissioners worked with a list containing Negroes as a significantly identifiable group, and no reason appears, with respect to Negroes, to apply the requirement under Georgia law to supplement the list if it does not include a fair representation of citizens of any significantly identifiable group.

Accordingly, we hold that the lower court did not err in overruling the plea in abatement and challenge of the appellants to the array of grand and traverse jurors, based an alleged racial discrimination.

■ The appellant Shepherd was tried in the lower court on the theory of guilt by reason of participation in a conspiracy, and we are aware of no requirement, under Georgia law or under any constitutional provision, that an indictment for the crime of arson must show that the State relies on the theory of conspiracy in order to authorize a charge of the law of conspiracy, if it is authorized by the evidence. The indictment clearly informs the accused that he, with others named therein, is charged with committing the crime of arson, and specifies the date and building. "It is not, on the trial of one of two

■

or more persons jointly indicted for a crime, inappropriate to charge upon the law of conspiracy merely because the indictment does not in terms allege that there was a conspiracy to commit the offense." *Dixon v. State,* 116 Ga. 186 (8) (42 SE 357). Also, see *Chambers v. State,* 194 Ga. 773, 781 (22 SE2d 487). The contentions of counsel in this respect are wthout merit.

The claim of counsel that the appellant was deprived of effective representation of counsel because the indictment does not show the theory of conspiracy, although argued and insisted upon in the brief, is entirely outside the scope of the enumerated error, which is directed only to a claim of error in instructing the jury on the law of conspiracy.

*Judgments affirmed. Hall and Whitman, JJ., concur.*