LEWIS *et al.* *v.* HILL, executor, and *vice versa.*

1. This case is *res adjudicata* by the decision in 80 *Ga.* 402, except as to the amount of Ray's property that was subject to be applied to the judgment and execution in favor of Armstrong, the direction given being·to determine how much thereof was released by the plaintiff, and to credit the defendants (the heirs of· Lewis) with whatever·amount was released.

2. Under the evidence adduced at the last trial, it is manifest that the heirs of Ray, by some arrangement amongst themselves, received all the property, real and personal, of Ray, the intestate. They were liable to Armstrong for the same at its real value, less the debts of higher dignity and less also the *pro rata* of other debts of Ray's estate of equal dignity with the bond from Ray to Armstrong, its dignity being that of promissory notes, and debts ranked by the code with promissory notes. The $1,000.00 paid on compromise is to be counted as if paid out of Ray's estate.

July 8, 1891. By two Justices.

*Res adjudicata.* Principal and surety. Before Judge BOWER. Dougherty superior court. October term, 1890.

Reported in the decision.

D. H. POPE, for LEWIS *et al.*

W. B. HILL and R. HOBBS, *contra.*

SIMMONS, Justice.

The facts of this case will be found reported in the case of *Lewis* v. *Armstrong,* 80 *Ga.* 402. The decision as announced in that case covers all the points of law made in the present bill of exceptions, and they are *res adjudicata* so far as the present case is concerned. At the conclusion of the opinion the following direction was given : "The court should ascertain upon the next trial the amount of Ray's property that was subject to this judgment and execution, and determine how much thereof was released by the plaintiff, and credit whatever amount was released to the heirs of Lewis."

The court, on the last trial, undertook to carry out this direction, but erred in crediting to the Lewises the amount only which Ray's property brought at the ad-

ministrator's sale.  Under the evidence adduced at the last trial, it is manifest that the heirs of Ray, by some arrangement among themselves, received all the property, real and personal, of their intestate.  The evidence shows that the widow of Ray purchased all the real estate at the sale.  She had no separate estate, and there was no bid other than hers at the sale.  Her two sons, the administrators, testified upon this trial, by interrogatories, that the real estate bought by their mother was worth $2,500 more than she gave for it at the sale; and that they would not have allowed it to be sold to an outside party for the same amount.  Coney, another witness, testifies that the real estate was worth about $2,500 more than it sold for at the sale; that he was one of the appraisers of the intestate's estate, and that the inventory and appraisement were correct, and that the estate was worth the amount it was appraised at, to wit, $11,703.  The value of the estate, as returned by the administrators after the sale, was less than $5,000. Another witness testified that he was intimate with the Ray boys, the administrators, and that they knew their father had signed the injunction bond and were uneasy about it, and they said they were anxious to wind up their father's estate as soon as possible to avoid the bond if they could; that he knew the value of Ray's estate when Ray died, and there was no change in values until after it was wound up and the railroad came through the county; that T. J. Ray, one of the administrators, told him he sold the property for less than it was worth, to make the estate as small as possible, to avoid the bond; and he further testified that Mrs. Ray had no separate estate; that she continued to live on the estate place and was supported from the place by her sons; they all lived on the places.

This evidence shows that the real value of the real estate was much more than the widow gave for it at the

administrator's sale, and the court should have found
the true market value of Ray's estate, instead of being
governed by the amount which the widow bid at the
sale, and should have given the Lewises credit for the
true value. The Rays were liable to Armstrong for
the real value of the estate, less the debts of higher dig-
nity, and less also the *pro rata* of other debts of Ray's
estate of equal dignity with the bond from Ray to Arm-
strong, the dignity of the bond from Ray to Armstrong
being that of promissory notes, and debts ranked by
the code with promissory notes (§2533, par. 7). Of
course the $1,000 paid by T. J. Ray to Armstrong as a
compromise and settlement of his father's liability on
the bond, will be counted as if paid out of Ray's estate.

*Judgment reversed on the main bill of exceptions, and
affirmed as to the cross-bill.*