THE WESTERN UNION TELEGRAPH COMPANY *v.* WATSON.

Where the plaintiff's alleged damages resulted, not from loss dependent on the state of his contract with his customer, as that contract actually existed at the time of default by the telegraph company, but by reason of failure to obtain a modification of that contract according to a proposition which the plaintiff intended to make and which the customer would have accepted if it had been made, neither of them in fact knowing of the other's state of mind on the subject until it was too late to make the modification or agree upon it, the damages were too remote and uncertain to be the basis of a recovery for delay in delivering a telegram and for exposure of its contents to the customer before delivery, thus causing the customer to take action contrary to the plaintiff's probable interest which otherwise he would not have taken.

July 30, 1894.

Action for damages.  Before Judge HUTCHINS.  Oconee superior court.  July term, 1893.

Watson sued the telegraph company for damages, and obtained a verdict for $180.  Defendant moved for a new trial, which was granted unless plaintiff would write off all in excess of $129.90.  This was done.

Watson testified: Am agent of the Brown Cotton Gin Company of New London, Conn., and as such sold to C. L. Pitner two seventy-saw gins, feeders and condensers, about the last of July or first of August, 1892, for $595.  My commission on the sale would have been $238.  I told Pitner the gins had been shipped, that I had a letter from the company stating they would be shipped in a day or two.  On September 2, 1892, I telegraphed them asking why the gins had not come, and in reply received the following. telegram from them: "Owing to press of orders, impossible to ship before Monday next.  Will that answer?"  I went at once to see Pitner at his mill, and there learned that he knew what was in the telegram and had gone to Athens to buy other gins.  I went to Athens that night to see him in regard to the gin, and to make arrangements with him to allow me to put in a new gin I had on hand, to be used by him until the gin I sold him came; and he agreed to it provided he could countermand the orders for gins he had made in Athens after he got there that evening.  Before going to Athens to see Pitner, I went to the depot and asked Gay, the agent, why he told Pitner what was in that telegram, and he said, " The devil! I never thought about it being any harm."  I lost $238 by Gay, agent of defendant, telling Pitner what was in the telegram; or if the telegram had been delivered within a reasonable time after it was received in the office at Watkinsville, I could have seen Pitner and could have made arrangements with him to wait until the gins came, and would not have lost my commission

as I did by reason of the contents of the telegram being divulged and the delay in its delivery.—Other evidence showed that the telegram was delivered at plaintiff's store between 2.30 and 3 o'clock P.M., September 2; and that he had been to Athens that day and got back to Watkinsville to his store by 2.30 o'clock and went over to his house, where he was when the telegram was delivered at the store, ate his dinner and came back to the store and his son gave him the telegram.

Gay testified: Pitner came to me on September 2, 1892, and asked me if the gins had come that Watson had ordered for him. I told him, no. I was both depot agent and telegraph agent. Just before he came in I had received the telegram, copied it out, put the copy in an envelope on the table, and the original I put on file. I did not divulge its contents to Pitner and did not call his attention to it. If he saw it in my office I did not know it. The message was received by me at 1:15 o'clock. I took the telegram and went at once to Watson's place of business, about half a mile from the telegraph office, and delivered it to his son. I did not take the time of delivery, though the rules of the company require it. I never do take it down in any case.—Pitner testified: Bought two gins from Watson the latter part of July or first of August. No time was specified for them to be delivered. He was to divide his commission with me; do not remember what that was. Do not think I was to pay over $450 or $500 for the gins, feeders and condensers. I went to Watson and asked him about the gins, and he said they had been shipped, as he had a letter from the gin company to that effect. I became impatient about the gins, as the season was upon me, and went to the depot on September 2, to know if they had come. When I asked Gay if they had come, he said no; and then my attention was called in some way by him to the telegram which was lying

on the table.  I picked it up and read it.  He did not
show it to me but called my attention to it in some way.
When I read it he shut up the office, and we went out-
side and had a conversation about the gins.  I then
went down to the gin-house and had my horse hitched
up, and went to Watson's store and asked where he
was and was told by his son that he was out.  I then
went to Athens and bought two gins.  If I could have
seen Watson before I went to Athens I would have ac-
cepted his proposition to put in the new gin, to be used
until the gins I had bought from him came, and would
not have bought other gins in Athens or elsewhere, for
I agreed to take his gins that night provided I could
countermand the orders with the parties from whom I
had purchased in Athens.  I went to see them the next
morning and they would not let me out of the trade.
If I had not seen the telegram I would not have gone
to Athens and bought gins from other parties.

DORSEY, BREWSTER & HOWELL and G. D. THOMAS, for
plaintiff in error.

W. M. SMITH and THOMAS & STRICKLAND, contra.

SIMMONS, Justice.

Under the facts in this case, which will be found set
out in the official report, the damages were too remote
and uncertain to be the basis of a recovery for delay in
delivering the telegram and for exposure of its contents
to the plaintiff's customer before delivery.  The dam-
ages did not result from any loss dependent on the
state of his contract with the customer as the contract
actually existed at the time of the default by the tele-
graph company.  Pitner, the customer, was to take
from Watson two gins of the Brown Cotton Gin Com-
pany of New London, Conn.  Pitner had waited for
some time for the gins to be delivered to him, but had
been disappointed.  When the telegram was disclosed

to him, he went to Athens and purchased another gin from a different person. This action is based on the theory that if the telegram had not been shown Pitner, Watson would have made a different arrangement with him, that he would ·have induced Pitner to consent to use another gin until the gins he was expecting to receive should arrive, and thus get his commission on the sale of those gins. In order to do this, it would have been necessary to obtain the consent of Pitner, and Pitner might or might not have made the new arrangement with Watson. It is true Pitner says now that he would have made it, but we cannot tell whether he would have done so or not; he might have been in a different state of mind then from the state of mind he was in at the trial of the case. He might have consented to it or might not have done so. On the whole, we think the damages are too remote and uncertain to be the basis of a recovery.                    *Judgment reversed.*