25047.   FURSTENBURG *v.* CITIZENS AND SOUTHERN NATIONAL BANK.

DECIDED JUNE 18, 1936.

W. P. Middlebrooks, Ezra E. Phillips, for plaintiff.
Alston, Alston, Fosler & Moise, for defendant.

MacIntyre, J.   J. S. Furstenburg (hereinafter referred to as the petitioner) brought an action for damages against the Citizens and Southern National Bank (hereinafter termed the defendant). The question for determination is whether or not the judge erred in sustaining the general demurrer to the petition and in dismissing the case.   For the purposes of this decision the following statement sufficiently sets forth the essential facts relied on for a

recovery. In March, 1934, the petitioner and the defendant entered into a contract whereby the petitioner agreed to buy from the defendant and the defendant agreed to sell the petitioner, on or before May 2, 1934, described land in the City of Atlanta for $3000, the contract stating that it was made subject to an option given by the defendant to L. M. Foster and A. D. Cantrell to purchase said land on or before May 1, 1934, for $3000. At and before the execution of the contract by the petitioner and the defendant, the petitioner asked the defendant if the option was assignable, and the defendant replied that it "contained a provision that it should not be assignable or transferable." Learning, on or about April 27, 1934, that Foster and Cantrell were attempting to induce competitors of petitioner to purchase the option, and Foster and Cantrell having offered to sell their option to him for $300, the petitioner advised the defendant of said attempt, and "again inquired whether it was possible for said option . . to be transferred, assigned, or sold, at the time assuring the defendant . . that if the same were transferable, assignable, or subject to be sold, petitioner could and would purchase the same; but again the defendant . . assured petitioner that said option was neither assignable, transferable, nor saleable." Having been lulled into a sense of security by these representations of the defendant, "petitioner put the matter out of his mind until April 30, 1934," when, upon inquiring of the defendant if Foster and Cantrell had exercised their option, the defendant advised the petitioner that they had, and that "petitioner could not acquire the property," though as a matter of fact this statement was untrue, and Foster and Cantrell did not exercise their option before May 1, 1934, but assigned it to I. N. Ragsdale and J. O'Hara, "for and by whom the same was exercised on or before May 1, 1934." All of said representations were false and known by the defendant to be false when made, and were made pursuant to a conspiracy entered into by the defendant, Foster and Cantrell, and Ragsdale and O'Hara, to prevent the petitioner from purchasing said land and to enable his competitors, Ragsdale and O'Hara, to acquire it. Said property "was of the reasonable value, on May 1, 1934, of $5500. . . Petitioner shows . . that the defendant . . injured and damaged petitioner in the sum of the difference between the price at which defendant contracted to sell petitioner said prop-

erty and its fair market value herein alleged, besides the amount of expenses and reasonable attorney's fees to which petitioner is being put by the bringing of this suit; . . that by reason of defendant's false representations to petitioner, and by reason of defendant's falsely misleading and deceiving petitioner as to the value of the option, . . petitioner was prevented from purchasing said option, . . which was of the reasonable value of $2500, thereby injuring and damaging petitioner in the sum of $2200, because petitioner could have purchased said option for $300, the same having been offered to petitioner . . at and for this amount." Petitioner seeks to recover $2200 actual damage, $1000 attorney's fees, and $5000 punitive damages.

It is our view that the action is grounded upon fraud and deceit effected by false representations made by the defendant pursuant to the alleged conspiracy, which false representations prevented the petitioner from purchasing an option worth $2500 for $300, and damaged the petitioner in the sum of $2200, the difference between the value of the option and the price at which the petitioner could have bought it. In view of the allegation that the owner of the land, the owners of the option, and petitioner's business rivals who wished to purchase the land had conspired to prevent the petitioner from acquiring the property in question, it appears highly improbable that Foster and Cantrell would have sold petitioner their option worth $2500 for $300. See *W. U. Tel. Co.* v. *Watson,* 94 *Ga.* 202, 206 (21 S. E. 457, 47 Am. St. R. 151); *Clay* v. *W. U. Tel. Co.,* 81 *Ga.* 285 (6 S. E. 813, 12 Am. St. R. 316). Is it even remotely probable the alleged co-conspirators of the bank would have offered to sell the option to the plaintiff for one eighth of its value if they were in fact conspiring to prevent the plaintiff from buying the property contained in the option? If we assume for the purposes of the demurrer that there was a conspiracy to defraud, we run into a contradictory statement alleged in the petition, which is that the alleged co-conspirators of the bank were doing an act (making an offer) which contradicted the theory of the conspiracy, and if we assume for the sake of the demurrer that the alleged co-conspirators of the bank made the offer recited in the petition, this would contradict the idea of the conspiracy. In short, the facts pleaded (construing them most

522

strongly against the pleader) disclose the existence of no such conspiracy to defraud as would make the defendant liable.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*