BRYANT *v.* THE STATE.

No. 14802. April 6, 1944. Rehearing denied May 5, 1944.

*Benning M. Grice* and *W. A. Bootle,* for plaintiff in error.

*T. Grady Head, attorney-general, Charles H. Garrett, solicitor-general,* and *L. C. Groves, assistant attorney-general,* contra.

Atkinson, Justice. ■ The plaintiff in error was tried for murder. He was convicted without recommendation, and sentenced to death by electrocution. A motion for new trial was overruled. and is here for review. The record and the briefs are voluminous, together containing a thousand pages. The case was previously before this court. *Bryant* v. *State,* 191 *Ga.* 686 (13 S. E. 2d, 820). The evidence relied upon to sustain a conviction was proof of the corpus delicti, incriminatory admissions, confessions, and some evidence in corroboration of a confession. If the confessions and incriminatory admissions were properly admitted in evidence, as having been freely and voluntarily made under the Code, § 38-411, there would be sufficient evidence to authorize the verdict; otherwise the evidence would not be sufficient to sustain the conviction. Under the grounds of the motion for new trial, numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, 15, 16, 17, and 18, each relating to the evidence of different witnesses who testified in reference to admissions or confessions by the accused, the evidence under which the admissions and confessions were admitted is attacked as not establishing either as having been freely and voluntarily made. It is insisted that all evidence relating to admissions and confes-

sions was the result of wrongful conduct on the part of the State's witnesses, and especially the conduct of and questioning by deputy sheriffs Waldron and Stokes, two of the State's witnesses; and that their conduct was such as to preclude any evidence of admissions and confessions, because the influence of the alleged coercion by these officers and other witnesses extended to and covered all admissions and confessions, and made them inadmissible as also coerced.

When the case was previously before this court, this same question was raised and ruled upon, and the evidence relating to the circumstances under which such evidence was admitted is set forth in that decision. Comparing the evidence relating to the admission of admissions and confessions which was adduced on the previous trial with that in the second trial, now under review, it is found to be substantially the same. In the first trial there was evidence that the two deputy sheriffs, at the request of the accused, had given him a total of about fifty cents with which to purchase tobacco and soft drinks. This evidence does not appear in the record of the second trial. Also, there was evidence in both trials that at the time the officers talked to the accused they were wearing their pistols, although nothing appears in the evidence reported in the former decision as to this except that the defendant in his subsequent statement said that the officers had their pistols; and one of the State's witnesses testified that on one occasion the officers had with them the gun which it was claimed the defendant had used. Other than this, there is no difference in substance, but only in phraseology.

In the previous decision, this court, in passing upon this evidence, held as a matter of law that the question of the voluntary character of these admissions and confessions was for the jury, and that it would not reverse the ruling admitting them in evidence. "A judgment of a trial court granting or refusing an injunction, when the same depends entirely upon a question of law, is, upon its affirmance by the Supreme Court, a final adjudication of such question." *Ingram* v. *Trustees of Mercer University,* 102 *Ga.* 226 (29 S. E. 273) ; *Hughes* v. *Morrison,* 141 *Ga.* 476 (81 S. E. 202) ; *City of Atlanta* v. *First Methodist Church,* 83 *Ga.* 448 (10 S. E. 231) ; *Georgia Railway & Power Co.* v. *Decatur,* 153 *Ga.* 329 (111 S. E. 911). "The charges of the court excepted to . . are in

accordance with the law, as declared in this case, when it was formerly before this court. 62 *Ga.* 685. Whether that decision be right or wrong, it is immaterial to inquire; it is enough to know that it is the law of this case. · Neither this nor the superior court has power to modify or change it." *Central Railroad* v. *Coggin,* 73 *Ga.* 689, 695. Points of law decided by this court are res adjudicata upon another appearance of the same case. *Lewis* v. *Hill,* 87 *Ga.* 466 (13 S. E. 588). In referring to a previous decision in the same case, it was stated: "Whether this decision be right or wrong, it is the law of this case; it is res ·adjudicata." *Saulsbury* v. *Iverson,* 73 *Ga.* 733, 735. Where a case was brought to the Supreme Court the second time, it was held that questions contained in the case at the time of its first appearance, though not insisted on, were res adjudicata. *McWilliams* v. *Walthall,* 77 *Ga.* ·7. Where, upon a retrial, a case is brought to this court for a second time, the rulings in the first decision on undisputed facts became res adjudicata. *Price* v. *Central of Georgia Ry. Co.,* 124 *Ga.* 899 (53 S. E. 455). The same ruling has been applied where the facts on the second trial were the same. *Henderson* v. *Central Railroad,* 73 *Ga.* 718 (3). This court will not review a former decision in the same case. *Rawlins* v. *State,* 126 *Ga.* 96 (54 S. E. 924). Whether this court has power to review or reverse a decision formerly rendered in the same case has been doubted. *Atlantic & Birmingham Ry. Co.* v. *Cordele,* 128 *Ga.* 293, 296 (57 S. E. 493). Where a petition was dismissed in the trial court upon general demurrer, and the Court of Appeals reversed the judgment, and subsequently the Supreme Court rendered a decision in another case, the effect being to show that the decision of the Court of Appeals was erroneous, and after the rendition of such decision by the Supreme Court, the case first mentioned again came to the Court of Appeals, the Court of Appeals was bound by its first decision and should not follow the decision of the Supreme Court. *Southern Bell Telephone & Telegraph Co.* v. *Glawson,* 140 *Ga.* 507 (79 S. E. 136).

The doctrine of "the law of the case" is not confined to civil cases, but is applicable also to rulings made by our courts of review in criminal cases. Where a former decision has been rendered by this court in the same criminal case, on its subsequent appearance this doctrine has been applied where the evidence shows substan-

tially the same facts: where there was a lack of proof of the corpus delicti and a connection of the accused with the alleged offense (*Wellman* v. *State,* 103 *Ga.* 559, 29 S. E. 761); that where the evidence did not authorize the conviction (*Stephens* v. *State,* 105 *Ga.* 844, 32 S. E. 344); where there was sufficient evidence to authorize the verdict (*Walker* v. *State,* 124 *Ga.* 97, 52 S. E. 319); where under the evidence and the prisoner's statement, voluntary manslaughter was not involved (*Herrington* v. *State,* 130 *Ga.* 307 (5), 60 S. E. 572); where manslaughter was not involved (*Dotson* v. *State,* 136 *Ga.* 243, 71 S. E. 164); as to the effect of cheering and applause inside and outside the court room (*Frank* v. *State,* 142 *Ga.* 741 (4), 83 S. E. 645, L. R. A. 1915D, 817); and as to the introduction of a letter in evidence. *Tanner* v. *State,* 163 *Ga.* 121 (4) (135 S. E. 917). Also see *Leary* v. *State,* 14 *Ga. App.* 797 (82 S. E. 471), and *Hudson* v. *State,* 26 *Ga. App.* 786 (107 S. E. 400).

In accordance with what is heretofore said, the rulings invoked under the above-enumerated grounds of the motion for new trial, are controlled by the previous decision in *Bryant* v. *State,* 191 *Ga.* 686 (supra), as to the admission in evidence of the incriminatory statements and confessions, the refusal, on motion, to rule out the same, and as to the constitutionality of the admission of this evidence. It may be further said that the ruling there made, to the effect that the admission of this evidence was not in violation of the fourteenth amendment of the Federal constitution (Code, § 1-815), or the provision against self-incrimination in the State constitution (Code, § 2-106), has not been affected by the decision of the United States Supreme Court in the case of McNabb *v.* United States, 318 U. S. 332 (63 Sup. Ct. 608, 87 L. ed. 819). That case is not binding upon us. The prosecution there involved was under the Federal law in the Federal court, and at the outset of the opinion it was said: "We brought the case here because the petition for certiorari presented serious questions in the administration of Federal criminal justice." Also, it was there said: "In the view we take of the case, however, it becomes unnecessary to reach the constitutional issue pressed upon us." See *Russell* v. *State,* 196 *Ga.* 275 (26 S. E. 2d, 528).

Grounds 10, 11, 12, and 13 of the motion deal with the same question. Each complains that the court erred in permitting the

solicitor-general to read to a witness in the presence of the jury, parts or all of the written statements made by the accused on November 2 and 6. Under the 10th ground, it appears that the statement of November 6 was read to the defendant's witness, Lloyd Ricks. Under the 11th ground, that part of the statement of November 2, relating to the homicide, was read to the defendant's witness, P. H. Williams. Under the 12th ground, the statement of November 6 was read to the defendant's witness, Cliff Moody. The 13th ground was based on the reading of the statements of November 2 and November 6 to the defendant's witness, Dr. Otis Knight. The objection in each ground is that the court erred in permitting the solicitor-general to read and re-read these statements in the presence of the jury. It was pointed out that the statement of November 2 was read to the jury by solicitor-general Chas. H. Garrett when it was originally introduced in evidence, and that the statement of November 6 was read to the jury by R. H. Casson at the time it was introduced; and that to permit the solicitor-general to read and re-read these statements continuously during the examination of witnesses for the defendant, over the repeated objections of counsel for the accused, was tantamount to permitting the statements to be taken to the jury room with the jury.

Each of the foregoing witnesses had testified in reference to the mental condition of the accused. Lloyd Ricks had testified: "I don't think he is mentally balanced, . . didn't have any memory, . . he is balmy, and by that I mean feeble-minded." P. H. Williams had testified: "He acted just like an animal, . . [his] memory was very poor. He didn't seem to take in anything, . . [he] didn't seem to be able to have any impression of anything." Cliff Moody testified: "He didn't have as much sense as the average man on the chain-gang, . . he didn't have the sense that he really ought to have;" and in answer to a hypothetical question setting forth the time, place, and manner of the robbery and homicide in the instant case, the witness testified: "I would not think this boy has got sense enough to do it. . . I would not think he had that much sense." Dr. Otis Knight, who taught psychology and sociology at Mercer University, and who qualified as an expert, testified that he had given the accused an intelligence test, and that, "I determined the mental age as seven years, ten months, or eight years. . . By the system of grading and the

648

scale now in use, the term that fits Willie now is imbecile. . . In my opinion Bryant is feeble-minded."

Each of the witnesses having testified as above indicated, and the witnesses who wrote down the two written statements having previously testified that each statement was taken down and recorded, as related by the accused in his own words, it was a proper subject and matter of cross-examination for the solicitor-general to read the statements to the witnesses, in order to elicit from them whether the ability of the accused to make such statements displayed such memory, association of ideas, and ability to relate events in chronological order, as would affect the opinion of the witnesses as to his mental condition.

■ Grounds 19 and 19A of the motion are based on the refusal of the court to permit G. C. Britt, a witness for the State, while on cross-examination, to answer the following questions: (10) "Do you recall whose jacket they identified it as being, as the Richard Collins jacket?" (19A) "I asked you whether or not that is the jacket that Officer McCallum told you was Richard Collins's jacket, and asked whether that jacket you are testifying about is the jacket that Mr. McCallum told you was Richard Collins's jacket and came from the Georgia-Carolina Oil Company?" To these questions the solicitor-general's objections on the ground of hearsay were sustained. The accused insists that the answers to these questions were admissible. Annie Ruth Clark had testified that immediately after the shooting she saw a man leave the premises wearing a certain described hat and jacket. Shortly after the crime was committed, Richard Collins was suspected, and subsequently, at the April, 1939, term of court, was indicted for the same murder. Soon after the murder and during the investigation, a hat and jacket, similar in description to those worn by the person who left the premises immediately after the shooting, were brought to headquarters. Annie Ruth Clark, who was taken to headquarters and shown the articles, testified: "I told them that that looked like the coat and hat I had seen that night." The witness, to whom the question now under consideration was propounded, and who was a police officer, had previously testified, "I saw this jacket which . . Annie Ruth Clark looked at . . I don't remember whether I was there when ι . [she] looked at it or not." In some manner the coat and hat had been misplaced before the trial and were

not available. The questions propounded to this witness, which are the subject of this ground of the motion, sought to elicit from him what some one had said as to whose coat and hat it was. If some one had told the witness that this was the Richard Collins coat and hat, it would not have been admissible for him to so testify. It would have been identifying the ownership of the articles by hearsay testimony. Such evidence does not meet the requirements of the Code, § 38-302, which provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." This section is limited to evidence of facts to explain conduct and ascertain motives, and the evidence now under question would neither explain the conduct nor ascertain the motive of either the witness or the accused.

■ Ground 20 alleges error in the refusal to grant a mistrial on account of a remark made by the solicitor-general during the redirect examination of the witness, J. C. Smith, who was in charge of the bureau of identification of the City of Macon. The witness had testified: "During the course of the investigation it developed that the person under suspicion had a jacket of that nature. The person under suspicion at that time was Richard Collins. I learned that Richard Collins had a coat and hat which answered the description which Annie Ruth Clark gave of the coat and hat worn by the man she saw the night of the crime. . . I did not have any other way of knowing whose coat and hat it was except by what somebody told me." Thereupon, the solicitor-general moved to rule out what the witness said as to the coat and hat belonging to Richard Collins, and the court ruled as follows: "I understood he introduced it for the purpose of explaining conduct. I will overrule the motion." Whereupon the solicitor-general stated "that he did not think the evidence amounted to a row of pins." The accused immediately made a motion for mistrial on the ground that it was improper for the solicitor-general to make this remark in the presence of the jury. After the motion for mistrial was made, the solicitor-general said: "I withdraw what I said. I wish I had never thought of it, never in the world." The court then overruled the motion for mistrial stating: "All questions of fact are to be considered by the jury and it is not a matter for counsel."

The movant insists that the remark was harmful, hurtful, and prejudicial to his case. During the progress of a trial and while evidence is being submitted, counsel should avoid making remarks in the presence of the jury as to the force or effect of the evidence. But where, as in the instant case, such a remark, though inopportune and out of place, was in no wise prejudicial or inflammatory, it was not cause for a mistrial. *Patterson* v. *State,* 124 *Ga.* 408 (52 S. E. 534); *Hicks* v. *State,* 196 *Ga.* 671 (2) (27 S. E. 2d, 307); *Woodward* v. *State,* 197 *Ga.* 60 (8) (28 S. E. 2d, 480). While the remark, made at that particular time, was improper, yet it would have been a legitimate statement as to the force and effect of such evidence had it been made during the course of the solicitor-general's argument, as he would have had a right to draw from this evidence any inferences apparently reasonable and legitimate. *Smalls* v. *State,* 105 *Ga.* 669 (3) (31 S. E. 571). In view of the withdrawal of the remark by the solicitor-general and the instruction by the court to the jury, we cannot see how the accused was injured.

■ Ground 21 alleges error in the refusal to declare a mistrial on account of another remark by the solicitor-general in the presence of the jury. This remark was made just as Lady Dixon, a witness for the defense, had left the witness stand and was passing between the solicitor-general and the jury. Lady Dixon, as a witness, had shown "a poor ability at remembering dates," and upon the conclusion of her testimony and after leaving the witness stand, she asked, "can I go home?" Whereupon the solicitor-general replied: "Yes, if you know the way, and if you don't, somebody will tell you." Then the solicitor-general laughed and two or three of the jurors laughed with him. The motion for new trial states the remark was made "before the jury and in the presence and hearing of the jury, and of counsel for movant, and in the presence of the court, but said remark was not heard by the court." During the same day of the trial and after four additional witnesses had testified, the movant's counsel made a motion for a mistrial because of the remark. After the jury retired, the following took place. The judge said: "I don't know how we would be able to recall what transpired. I didn't hear it. I don't know whether you can agree upon what was said." Counsel for the movant then repeated the remark made by the solicitor-general, and the solicitor-general

then stated: "She was coming along here by me. I had asked her two or three dozen questions . . ninety per cent. of which answers she didn't know. That is all I could get out of her, and she asked if she could be excused—said she wanted to go home—and then counsel asked me if I would excuse her and she looked at me and said, 'Can I go home?' and I said, 'Yes, if you know the way, and if you don't, somebody will tell you,' . . I said it in a jocular mood." The court overruled the motion, and upon the return of the jury gave them the following instructions: "I want to give you these instructions, gentlemen. If any side remarks or side remark was made by the solicitor-general to the witness, Lady Dixon, that is not a proper remark to be made in your hearing, and you will not consider that remark. It is not proper for any such remark to be considered by you as casting any reflection on the witness. You will erase any such remark or remarks from your mind, and not give it any consideration whatever upon the issues of this trial. I will overrule the motion." Movant insists that the remark was calculated to ridicule the witness and to discredit her testimony and therefore was highly prejudicial. Side remarks, or "side-bar" remarks, made by counsel during the trial of a case and in the presence of the jury, are improper. But all improper conduct in the court-room is not prejudicial or inflammatory as against the person on trial. The remark by the solicitor-general which is the subject of this ground of the motion for new trial was more a breach of the decorum of the court than a violation of the rights of the accused. In view of the instructions given to the jury, the circumstances did not require the grant of a mistrial.

■ Ground 22 alleges error in the sustaining of an objection to a question propounded on cross-examination to R. H. Casson, a witness for the State. This witness had testified that he knew nothing about the circumstances under which the written confession of November 6 was dictated, but that after the confession was written off he took it to the accused, read it over to him phrase by phrase, and as each phrase was read the accused asserted that it was correct. The written confession stated that about ten days after the homicide the accused left Macon and went to Mayfield where he spent $300 or $400, and then went to Valdosta and spent $300 or $400. On cross-examination the witness was asked: "If you had known that his mother had to borrow $3 to send him to Val-

dosta you would not have let him sign that statement?" The court sustained an objection to this question, and properly so. The question did not call for a fact, but instead for a mere operation of the witness's mind as to his conclusion of what he would have done under an assumed state of facts. *Western Union Telegraph Co.* v. *Watson*, 94 *Ga.* 202, 206 (21 S. E. 457, 47 Am. St. R. 151); *Friedlander* v. *Kassell*, 38 *Ga. App.* 443 (2) (144 S. E. 143). Moreover, it was a hypothetical question to a non-expert witness, and at the time it was propounded it was not predicated upon any testimony then before the court.

■ The 23d ground of the motion alleges error in the refusal to declare a mistrial on account of the conduct of the solicitor-general during the cross-examination of M. M. Ferrell, a witness for the accused. The witness had testified on direct examination that he had gone to the home of the accused and made an examination of the ground near the chimney under the house, and found no evidence indicating that anything had been buried there. On cross-examination by the solicitor-general the witness said: "Q. You went out there shortly before the defendant was tried the other time? A. Yes, sir. Q. That trial the other time was in February, 1940? A. I believe that is right. I don't remember the exact date on it." The solicitor-general then walked over to the witness stand where the witness was sitting and held before the witness's eyes the indictment against the movant in this case, and pointing his finger at the date on the verdict returned on the indictment by the jury which tried the case the first time, asked this question: "That is the jury's notation, 19th day of February, 1940?" to which the witness replied, "Yes, sir." Q. "How long before that trial was it before you went out to inspect the premises? A. Three or four weeks, I believe. Q. That was the last part of January? A. Yes, sir. Q. You went at the suggestion of Mr. Bootle?" Immediately after the last question above, counsel for the movant moved for a mistrial because of the question: "That is the jury's notation, 19th day of February, 1940?" and the conduct of the solicitor-general in presenting the indictment to the witness, as above stated. This ground states that, although the jury saw and heard all that was said and done while the paper was being held before the witness for his observation, they could not read any of the writing on the indictment. The movant insists

"that this conduct of the solicitor-general was highly prejudicial, harmful, and hurtful to movant because it forcibly directed their attention to the fact that one jury had tried and convicted him for this same offense. Movant contends that when the solicitor-general asked in the jury's hearing 'That is the jury's notation, 19th day of February, 1940?' he, in so many words, told the jury that the other jury convicted movant on February 19, 1940, for that as a matter of common knowledge juries make on indictments only two notations 'guilty' or 'not guilty,' and in those instances where the jury's notation is 'not guilty,' there is no second trial. Movant contends therefore that since, as the jury well knew, they were trying movant the second time, that first 'notation' referred to by the solicitor-general was, by virtue of the solicitor-general's reference to it, well known to the jury to be a notation of 'guilty.'" In reference to this ground of the motion for new trial, the judge attached a certificate, as follows: "It is further certified that at the time the original indictment was shown to the witness Ferrell, and the question made the basis of this motion for mistrial was asked, the paper shown to this witness was not referred to as the indictment, and while the paper was being held before the witness for his observation, the jury could not then read any printing or writing on this paper. The court does not know whether any member of the jury ever knew that the paper exhibited to this witness was the original indictment. . . Second, it is further certified generally, and particularly with reference to ground 23 of said amended motion, that before this case was submitted to the jury, counsel for both sides agreed in open court that a copy of the original indictment, containing no reference whatever to arraignment, plea, or verdict on the former trial, should be prepared and submitted to the jury to be taken out with them in lieu of the original indictment. This agreement was approved by the court, and such a copy was prepared and taken out by the jury. This jury did not at any time have possession of the original indictment with the arraignment, plea, and verdict upon the former trial on it. According to the agreement between counsel, this agreement was not made in the presence of the jury and the substitute indictment was not prepared in the presence of the jury, nor was this agreement or substitution called to the attention of the jury."

The question for determination under this ground is whether or

not the conduct of the solicitor-general and the statement made by him were tantamount to telling the jury that on a previous trial the jury had found the accused guilty under this charge. The fact that there had been a previous trial of the accused under this same charge was well known to the jury, as there is much reference in the record to what various witnesses had testified on the former trial, some of which had been brought out by counsel for the accused. In accordance with the facts contained in this ground, the jury saw the solicitor-general present a paper to the witness, point out an entry thereon, and ask this question: "That is the jury's notation, 19th day of February, 1940?" What paper it was, or its contents, in so far as this ground of the motion discloses, was not known to the jury. In this regard, it is stated that they could not read any of the writing thereon, and in the certificate of the trial judge it is stated that the paper was not referred to as an indictment. Considering all of the concomitant circumstances surrounding this incident—that is, that the witness was being questioned as to the date of the previous trial, and the solicitor-general exhibited to the witness a paper, pointed out a date thereon, and asked: "That is the jury's notation, 19th day of February, 1940?"—we cannot say that from such facts the jury, or any juror, deduced that the jury on the previous trial found the accused guilty. Had the language been: "That is the jury's *verdict,* 19th day of February, 1940?" with a reasonable amount of legal knowledge and by a process of logical deductions, it could have been determined that the jury had returned some verdict other than one of not guilty. But "notation" is not synonymous with "verdict," nor could it have necessarily been so construed by the jury in the instant case. While the question is novel, yet, to reach any other conclusion would require this court to give the jury credit for a knowledge of legal procedure and a power of analytic reasoning that is beyond the requirements of qualification for jury service.

■ The 25th ground of the motion alleges error in the refusal to grant a mistrial on account of a remark by the solicitor-general in the presence and hearing of the court and jury. This incident occurred during the direct examination of Leola Banks, a witness for the accused. In accounting for his absence from his home during a period of time between the homicide and his incarceration in jail, the accused sought to show that he left the city on account of

trouble he had with some employees of the T. & T. Packing Company, an incident entirely disconnected with the homicide which was the subject of the instant trial. Leola Banks testified: "He come back in the door panting like he was tired, and he said the T. & T. man shot at him," to which the solicitor-general objected as follows: "I object to that. I will withdraw my objection; the Supreme Court—I am scared of the Supreme Court." Immediately upon the conclusion of the witness's testimony, and within thirty minutes after the solicitor-general made the remark, counsel moved for a mistrial and stated: "This remark was highly prejudicial because this case having been tried in this court was reversed and a new trial granted because of the error of the presiding judge in the exclusion of hearsay testimony, which was in explanation of conduct; and the jury impaneled to try this case must have been aware of the former trial." In this ground it is alleged that immediately after the first conviction of the movant, the Supreme Court had in January, 1941, reversed the conviction on account of error in the charge, and the exclusion of certain hearsay testimony; that the local newspapers had carried stories to this effect; that the solicitor-general, by the remark, "directed the attention of the jury to the prior conviction of movant on this same charge;" and that it was "equivalent to the solicitor-general's stating to the jury that a prior jury had convicted movant on this same indictment for this same charge." Much that is said in the preceding division of this opinion in reference to the assumed power of deduction by the jury is applicable here. While it is better practice, during the trial of cases, for the court and counsel not to make references to the power of the reviewing courts except to cite their decisions as authority; yet the statement here made by the solicitor-general could in no wise be so construed as prejudicial to the accused, and the trial judge properly overruled the motion for a mistrial.

■ The 24th ground of the motion alleges error in the court's refusal to permit Will Ross, a witness for the accused, to answer the following question: "What did he (Colonel Dixon) tell you?" The accused sought to establish that Colonel Dixon was guilty of the crime for which the accused was being tried, and upon the court's refusal to permit the witness to answer the foregoing question, counsel for the accused related the witness's expected response. This response, as stated by counsel, would have been that a state-

ment was made by Colonel Dixon to the witness, Will Ross, in which Colonel Dixon admitted that he killed the man for whose homicide the accused was charged, and related details of the manner in which the killing took place (the proposed statement in no way connecting the accused with the crime). In support of the admission of this testimony from Will Ross, counsel related testimony that would be offered, and other testimony that had previously been admitted, to connect and illustrate the proposed testimony, and to establish that Colonel Dixon had committed the homicide, and also evidence that Colonel Dixon was in another state and accordingly inaccessible.

It is a well-settled principle of law in this State that statements made by another person to the effect that he, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused upon his trial. This principle has been applied where it was sought to introduce the confession of one who was not accused of having any connection with the crime. *Moughon* v. *State,* 57 *Ga.* 102 (3); *Daniel* v. *State,* 65 *Ga.* 199; *Lowry* v. *State,* 100 *Ga.* 574 (28 S. E. 419); *Beach* v. *State,* 138 *Ga.* 265 (2) (75 S. E. 139); *West* v. *State,* 155 *Ga.* 482 (117 S. E. 380); *Johnson* v. *State,* 188 *Ga.* 662 (4 S. E. 2d, 813). The same principle has been applied to the admission of confessions by one who was jointly indicted with the accused. *Lyon* v. *State,* 22 *Ga.* 399; *Kelly* v. *State,* 82 *Ga.* 441 (2) (9 S. E. 171); *Robison* v. *State,* 114 *Ga.* 445 (2) (40 S. E. 253); *Whitaker* v. *State,* 159 *Ga.* 787 (127 S. E. 106); *Parks* v. *State,* 24 *Ga. App.* 243 (100 S. E. 724). The same rule has been followed where it was sought to procure a new trial on the ground of newly discovered evidence that another had confessed to the crime. *Briscoe* v. *State,* 95 *Ga.* 496 (20 S. E. 211); *Hubbard* v. *State,* 57 *Ga. App.* 856 (2) (197 S. E. 64). And also, where there was a motion to continue on account of the absence of a witness who would testify that one jointly indicted with the accused had confessed. *Delk* v. *State,* 99 *Ga.* 667 (3) (26 S. E. 752).

The accused insists that none of the above-cited cases are controlling, as there is nothing in any of them to show that the person who it was claimed made the confession was inaccessible to the court, or that there was other evidence pointing to the guilt of the person making the confession; whereas, in the instant case,

there was evidence that he was inaccessible and also much evidence to indicate his guilt. In *Green* v. *State,* 153 *Ga.* 215 (2) (111 S. E. 916), it was held: "The declaration of a person, since deceased, that he committed the killing for which the accused was on trial, was not admissible on behalf of the latter." Under this ruling it seems to be definitely settled that the inaccessibility of the person making the confession does not alter the rule. Counsel for the accused requests that this case be reconsidered, reviewed, and overruled, in so far as it is inconsistent with the admissibility of this evidence offered by the witness, Will Ross. This court declines to do so, as we consider this ruling sound, and in accordance with the overwhelming weight of authority on this subject. 20 Am. Jur. 428, § 495; 35 A. L. R. 441; 48 A. L. R. 348; 37 L. R. A. (N. S.) 345; 16 C. J. 643, § 1278; Ann. Cas. 1913E, 722. Nor does the fact that there is other evidence to connect the one whose confession is sought to be introduced change this rule. While there is some authority to the contrary from other courts, based upon particular circumstances, yet we do not think such exceptions are sound; and to follow any rule other than what is herein stated would not be conducive to a proper administration of our criminal law.

■ Ground 26 complains of error in the charge of the court on the subject of reasonable doubt, to wit: "Now a reasonable doubt is just what the term implies. It is a doubt based upon reason, a doubt for which you can give a reason;" the particular objection being to the phrase, "a doubt for which you can give a reason." This exact language has heretofore been held not to be error. *Vann* v. *State,* 83 *Ga.* 44 (4) (9 S. E. 945); *Jordan* v. *State,* 130 *Ga.* 406 (60 S. E. 1063); *Arnold* v. *State,* 131 *Ga.* 494 (4) (62 S. E. 806); *Hudson* v. *State,* 153 *Ga.* 695 (12) (113 S. E. 519); *Holmes* v. *State,* 194 *Ga.* 849 (2) (22 S. E. 2d, 808); *Andrews* v. *State,* 196 *Ga.* 84 (10) (26 S. E. 2d, 263). Counsel's motion to reconsider and overrule these cases is denied.

■ The 27th ground alleges error in the following portion of the charge on the subject of insanity: "I charge you that although the burden of establishing his insanity or unsoundness of mind at the time of the alleged offense be not successfully carried by the defendant, so as to authorize his acquittal on this ground, it is nevertheless the duty of the jury to consider the evidence touching

the alleged insanity in connection with the other evidence in the case; and if, in view of all the evidence, the jury entertain a reasonable doubt of the guilt of the defendant, he should be given the benefit of that doubt and should be acquitted." It is insisted that the portion of the above statement, to wit, "that although the burden . . be not successfully carried by the defendant," was an expression of opinion by the court that the accused had not successfully carried the burden of establishing his insanity. We can not agree to this interpretation. Just preceding this paragraph, the court had charged on the preponderance of evidence to establish the defense of insanity; and when taken in connection with that part of the charge, the portion complained of could not be construed as an expression of opinion, but must be taken merely as a further instruction that, in the event the accused had not carried the burden of establishing insanity, it would be their duty to consider such evidence along with all the other evidence in passing upon his guilt or innocence.

The 28th ground of the motion is based upon newly discovered evidence contained in fourteen affidavits of witnesses accompanied by supporting affidavits; and the effect of each is to establish that Colonel Dixon, and not the accused, is the guilty party. In the trial of an accused, it is always proper and relevant for the accused to introduce evidence to show that some one else, and not the accused, is the guilty party; but evidence to establish this fact must be such evidence as is relevant on the trial of the accused, and does not necessarily include all evidence that would be relevant on the trial of the one who the accused seeks to show was the guilty party. From a perusal of the fourteen affidavits, forming the basis of this ground of the motion, practically all, or at least a great portion, of the facts set forth would be proper evidence on the trial of Colonel Dixon; but a large portion of these facts would not be relevant in the event of another trial of the accused. We must view the facts stated in these affidavits purely from the point of view of their relevancy and effect in another trial of the accused, and not as they may relate to a trial of Colonel Dixon. After a painstaking examination of each of these affidavits, eliminating therefrom the parts that would not be legal testimony in another trial of the accused, the material parts may be summarized as follows: That Colonel Dixon was in Macon Saturday

morning before the killing of Mr. Trice that night. He was dressed in overalls, had on a jacket that zipped up, which was shorter than the ordinary coat, and wore a cap, all being similar to those worn by the party who did the killing. ˙ He had always worn good neat dress clothes, and was never seen before this date wearing any work clothes like those worn that morning. He had no job but always had money. He owned a pistol that was bright-colored. He was not seen in Macon from the Sunday, the day after the killing, until three or four weeks later. In the latter part of September, 1941, he was placed in the jail at Macon. On July 1, 1942, he was sent to the State Hospital at Milledgeville, and at that time was in a highly excited condition; but responded to treatment and was returned back to the jail in Macon on August 21, 1942. When confronted with the women with whom he had previously lived, with his sisters, and with his mother, he would not. recognize them, but subsequently recognized his mother.

While the affidavits relied on to constitute this ground are copi-ous, yet when their inadmissible parts are deleted, and consideration is given to only the portion which would be admissible in the event of another trial (as above set forth), it is apparent that such. portion would not have required the trial judge to grant a new trial, and his refusal to do so was not error.

The trial judge did not err in overruling the motion for new trial. *Judgment affirmed. All the Justices concur.*